Rudolph J. WOLF, Plaintiff-Appellant,

v.

JANE PHILLIPS EPISCOPAL–MEMORIAL MEDICAL CENTER et al., Defendants-Appellees.

No. 74–1496 (73–C–380).

United States Court of Appeals, Tenth Circuit.

April 7, 1975.

Rehearing Denied June 2, 1975.

---

Gerald E. Kamins, Tulsa, Okl., for plaintiff-appellant.

John R. Richards, Grigg & Richards, Alfred B. Knight, Knight, Wilburn & Wagner, Joseph A. Sharp, Best, Sharp, Thomas & Glass, and Dan A. Rogers, Rogers, Rogers & Jones, Tulsa, Okl., for defendants-appellees.

Before LEWIS, Chief Judge, and SETH and McWILLIAMS, Circuit Judges.

LEWIS, Chief Judge.

The sole question presented here is whether the plaintiff's complaint stated facts sufficient to constitute a claim for relief under section 1 of the Sherman Act, 15 U.S.C. § 1. The United States District Court for the Northern District of Oklahoma alternatively concluded that the acts complained of by the plaintiff did not affect the interstate commerce of a business engaged in interstate commerce and, citing Page v. Work, 9 Cir., 290 F.2d 323, cert. denied, 368 U.S. 875, 82 S.Ct. 121, 7 L.Ed.2d 76, granted the defendants' motion to dismiss for lack of subject matter jurisdiction. On the plaintiff's appeal from that ruling, we must accept as true the facts contained in the complaint. Walker

Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 174–75, 86 S.Ct. 347, 15 L.Ed.2d 247; United States v. New Wrinkle, Inc., 342 U.S. 371, 373, 376, 72 S.Ct. 350, 96 L.Ed. 417.

I.

The plaintiff is an osteopathic physician and surgeon licensed by the state of Oklahoma and certified in General Practice by the American Osteopathic Board of General Practitioners. He practices in Bartlesville, Oklahoma. There are two hospitals in Bartlesville, the Memorial Hospital and the Jane Phillips Episcopal Hospital. Each is controlled and managed by the Jane Phillips Episcopal-Memorial Medical Center. Before a physician may admit patients to either hospital, he must have been accepted as a member of the medical staff of the hospitals. The requirements for such membership are set by the Medical Center's bylaws, which generally govern the medical staff and which reflect the medical staff's recommendations that have been approved by the Medical Center's board of trustees. Since 1966 the plaintiff has made repeated requests for membership on the medical staff, but none of his requests has been successful. Neither has any other osteopathic physician been accepted as a member; the medical staff is composed solely of medical doctors.

In his complaint the plaintifff alleged that the chairman and members of the board of trustees of the Medical Center and the members of the medical staff of the hospitals "have agreed, reached some understanding or conspired among themselves" to restrict the membership of the medical staff to medical doctors, thereby excluding the plaintiff and preventing his treating patients in either of the Bartlesville hospitals. The plaintiff claimed that this "concerted exclusionary action or group boycott" was illegal per se under section 1 of the Sherman Act. He claimed also that the medical practice of both the defendants and himself "involves directly [or] affects interstate

commerce" and that the defendants' conspiracy to exclude the plaintiff from their medical staff "seriously and unreasonably restrains competition" in such commerce. More particularly, he claimed that the defendants' conduct affected his practice in the following ways: potential patients failed to seek the plaintiff's services because he was unable to provide local hospital care if needed; plaintiff's patients who required hospitalization could only be treated at a hospital that was 35 miles away; and industrial-accident patients were not referred to the plaintiff because he was unable to provide local hospital care. Finally, plaintiff claimed that he had suffered a loss of gross income of $1 million, that he is entitled to treble damages, and that the defendants should be enjoined from engaging further in their conspiracy to exclude the plaintiff from their medical staff.

## II.

Plaintiff first contends on appeal that the practice of medicine is "trade or commerce" within the Sherman Act and that the medical profession cannot therefore be exempted from the application of the antitrust laws as a "learned profession." Although the district court, in its memorandum opinion, stated that "doctors are exempt from the federal antitrust laws since they are members of a 'learned profession,'" the court also indicated that the plaintiff's complaint was jurisdictionally deficient on another, independently sufficient ground—namely, that the facts alleged would not support the proposition that the defendants' conduct substantially affected interstate commerce. Thus, we need not decide whether the practice of medicine generally is exempt from the antitrust laws as a "learned profession." Whatever be the proper answer to that question, we believe that the district court's alternative rationale is reason enough for the dismissal of plaintiff's action, and, accordingly, we affirm the judgment of the district court.

The effect of the alleged conspiracy is clearly to restrain the plaintiff from practicing medicine and furnishing medical services as a member of the defendants' medical staff. The question arises, then, whether the defendants' conduct has substantially affected interstate commerce. If so, the district court had jurisdiction. Burke v. Ford, 389 U.S. 320, 321, 88 S.Ct. 443, 19 L.Ed.2d 554, citing United States v. Employing Plasterers Ass'n, 347 U.S. 186, 74 S.Ct. 452, 98 L.Ed. 618; Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328. If not, the district court had no jurisdiction. United States v. Shubert, 348 U.S. 222, 75 S.Ct. 277, 99 L.Ed. 279; United States v. Employing Plasterers Ass'n, supra. The same question has arisen in other cases in similar contexts. A review of those cases indicates that the question here must be answered negatively.

In United States v. Oregon State Medical Society, 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978 the Court reviewed a lower court ruling dismissing an action brought to enjoin the Oregon State Medical Society, eight county medical societies, an Oregon corporation engaged in the sale of prepaid medical care, and eight doctors from monopolizing the business of furnishing prepaid medical care on a contract basis. The lower court had found that the defendants' conduct did not constitute interstate commerce under either the Sherman Act or the Constitution's commerce clause. The Supreme Court affirmed, conceding that across-state-line activities of the doctors' associations had been shown but noting that the necessary nexus between the restraint itself—the allocation of territories within the state by the doctor-sponsored plans—and those activities had not been shown. 343 U.S. at 338, 72 S.Ct. 690. Thus, despite the Court's concession that "[t]he Government did show that Oregon Physicians Service made a number of payments to out-of-state doctors and hospitals" for services rendered out-of-state, such payments were capable of being characterized as "few, sporadic

and incidental," and the defendants' business was wholly intrastate. 343 U.S. at 338–39, 72 S.Ct. 690, at 698.

In Spears Free Clinic & Hospital v. Cleere, 10 Cir., 197 F.2d 125, a chiropractic hospital sought damages for injuries that allegedly resulted from the conspiracy of the defendants, members of a Colorado medical society, the State Board of Health, and others, "to monopolize the entire practice of the healing arts within the State of Colorado in the medical profession, to the exclusion and restraint of the practice of chiropractic." *Id.* at 126. The hospital alleged specifically that it regularly treated patients from out-of-state and from foreign countries and that the defendants had conspired to restrain this trade by preventing the hospital from being licensed and by interfering with its maintenance and operation. Relying on United States v. Yellow Cab Co., 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010, and Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, we concluded that the defendants' conduct had "no . . . substantial effect on interstate or foreign commerce." *Id.* 197 F.2d at 128. The effect upon interstate commerce was too "incidental or remote" to bring the defendants' conduct within the proscriptions of the Sherman Act. *Id.* at 126. Thus, the practice of medicine in Colorado, including the business of the plaintiff hospital, was entirely intrastate in character.[1] *Id.*

The case most directly in point is Riggall v. Washington County Medical Society, 8 Cir., 249 F.2d 266, cert. denied, 355 U.S. 954, 78 S.Ct. 540, 2 L.Ed.2d 530. There the plaintiff, a physician and surgeon, alleged that the members of the defendant medical society had conspired to refuse membership to the plaintiff and that, as a result, he had been prevented in his business from treating as

many patients as would have otherwise sought his services. The court affirmed the lower court's ruling dismissing the action, noting that the treatment of patients who must travel interstate "does not result in [the plaintiff's] practicing his profession in interstate commerce as the transportation of such patients is incidental." *Id.* at 268. Riggall's complaint was "wholly lacking in allegations essential to a cause of action under the Sherman Anti-Trust Act." *Id.* at 270. We reach the same conclusion in the case at bar; the facts alleged do not support the proposition that the restraint upon plaintiff's practice causes more than an insubstantial effect upon interstate commerce.

### III.

Plaintiff also seeks to establish jurisdiction by focusing upon the interstate nature of the defendants' business of providing hospital care services. Thus, relying on Doctors, Inc. v. Blue Cross of Greater Philadelphia, 3 Cir., 490 F.2d 48, he contends that jurisdiction is present in the instant case. In *Doctors,* the plaintiff hospital claimed that Blue Cross, which dominated the third party hospital services payer market in Greater Philadelphia, had conspired with a local advisory planning agency to terminate the hospital's status as a Blue Cross member, thereby effectively excluding it from competition for the hospital care of Blue Cross subscribers. The court observed that the plaintiff purchased a large volume of interstate goods and that the plaintiff's continuing ability to purchase such goods was jeopardized by its threatened elimination from the local market of providing hospital care services. The court concluded that the alleged conspiracy portended a substantial effect on interstate commerce in these goods and that the lower court therefore

---

1. Although we recognize that cases such as *Oregon State Medical Society* and *Spears* could be read as suggesting the proposition that state-wide professional organizations and their members do not engage in interstate commerce in any of their activities—or, at any rate, that they are somehow effectively exempt from the antitrust laws, we do not subscribe to that proposition in support of our decision in the instant case. We have referred to those cases, rather, for the more narrow proposition, that the plaintiff's business of practicing medicine and furnishing medical services is wholly intrastate in character.

had erroneously dismissed the hospital's action.

Plaintiff's reliance on *Doctors* is misplaced. We note first that, aside from a general allegation that his business involves interstate commerce, the plaintiff does not suggest that the defendants' conspiracy threatens his purchase of interstate goods or that the flow of such goods would be affected in any way by his exclusion from the defendants' medical staff. And we have already decided, *supra,* that plaintiff's business of practicing medicine and furnishing medical services is wholly intrastate. Whatever effect the alleged conspiracy might have upon interstate commerce in goods purchased by the plaintiff is insubstantial and therefore an insufficient basis for jurisdiction.

Second, we note that the plaintiff, by his general allegation that the defendants' business involves interstate commerce, has suggested that that business has been affected by the defendants' conspiracy to exclude plaintiff from their medical staff. Nonetheless, even were we to concede, by *Doctors,* the interstate character of defendants' business, we fail to perceive the relevance to the plaintiff's claim that the defendants adopted a plan, that the plan limited or controlled the membership of the defendants' own medical staff, and that the plan in a very conceptual sense thereby affected the services which the defendants themselves might provide. The facts alleged by the plaintiff cannot support the proposition that his exclusion from the medical staff has affected, or threatens to affect, the defendants, their hospitals, or through them interstate commerce. The facts do not support the existence of the requisite nexus between the defendants' conduct and interstate commerce.

Affirmed.