578 F.2d 1319
 44 A.L.R.Fed. 732, 1978-1 Trade Cases 62,078
 J. P. BRYAN, Plaintiff-Appellant,
v.
STILLWATER BOARD OF REALTORS, Arlene Barnes, Tom D. Berry,
Lloyd V. Daugherty, Happy P. Marton, Billie V. Fisher,
Freeman L. Dilbeck, Arthur W. Akerson, Kendall Grindstaff,
Max Hanson, Marsha Teague, Leonard G. Herron, Jr., Paul
Hieronymus, Gene Hoyt, Price Campbell, William Auflegor, Ken
Garrett, Paul Kerr, Max Koerner, John Duck, Benjamin
Kraybill, C. R. Millard, Kelly P. Powell, Lecil Bickett, C.
Ray Smith, Dwayne R. Wilson and Wendell Stephens,
Defendants-Appellees.
 No. 77-1111.
 United States Court of Appeals,
Tenth Circuit.
 Submitted June 3, 1977.
Decided July 26, 1977.
 
 N. Franklyn Casey, Tulsa, Okl., for plaintiff-appellant.
 Carroll F. Pope, Stillwater, Okl., and Burck Bailey of Fellers, Snider, Blankenship & Bailey, Oklahoma City, Okl., for defendants-appellees.
 Before SETH, McWILLIAMS and BARRETT, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 J. P. Bryan (Bryan) appeals from the order of the district court granting appellees' Motion to Dismiss complaint and cause of action for failure to state a claim upon which relief may be granted and for lack of jurisdiction over the subject matter because the activity complained of ". . . is local and does not restrain trade or commerce among the several states." (R., Vol. I, p. 77.) The trial court held that the absence of subject matter jurisdiction (Fed.Rules Civ.Proc., rule 12(b)(1), 28 U.S.C.A.) and the failure to state a claim upon which relief may be granted (Fed.Rules Civ.Proc., rule 12(b)(6), 28 U.S.C.A.) could not be cured by a "more definite statement" or amendment which Bryan sought in the alternative to file, which request was denied. (R., Vol. I, p. 77.)
 
 
 2
 The parties to this action are residents of the State of Oklahoma. A rule 12(b)(1) motion is typically employed when (as in the case at bar) there is no diversity of citizenship between the parties and the claim asserted by plaintiff does not involve a federal question or when the amount in controversy does not exceed the required jurisdictional amount. Wright & Miller, Federal Practice and Procedure, Rule 12, § 1350, pp. 542, 543. A rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted puts in issue the legal sufficiency of plaintiff's declaration by admitting all of the well pleaded facts in the plaintiff's pleadings, thereby taking the position that even if all of those allegations are true, still no relief is warranted. Wright and Miller, Federal Practice and Procedure, Rule 12, §§ 1355, 1356, 1357, pp. 587-617. The test most often applied to determine the sufficiency of the complaint to state a claim is set forth in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957):
 
 
 3
 . . . In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.
 
 
 4
 355 U.S., at pp. 45, 46, 78 S.Ct., at p. 102.
 
 
 5
 Accord : Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Dewell v. Lawson, 489 F.2d 877 (10th Cir. 1974); Gas-A-Car, Inc. v. American Petrofina, Inc., 484 F.2d 1102 (10th Cir. 1973); Jackson v. Alexander, 465 F.2d 1389 (10th Cir. 1972); Franklin v. Meredith, 386 F.2d 958 (10th Cir. 1967); Fed.Rules Civ.Proc., rule 8(a), 28 U.S.C.A.
 
 
 6
 On a motion to dismiss, facts well pleaded are taken as correct, but allegations of conclusions or of opinions are not sufficient when no facts are alleged by way of the statement of the claim. Fed.Rules Civ.Proc., rule 8(a) (2), 28 U.S.C.A.; Coopersmith v. Supreme Court of Colorado et al., 465 F.2d 993 (10th Cir. 1972); Olpin v. Ideal National Insurance Company, 419 F.2d 1250 (10th Cir. 1969), Cert. denied, 397 U.S. 1074, 90 S.Ct. 1522, 25 L.Ed.2d 809 (1970).
 
 
 7
 With the above rules guiding us, we will now review the Bryan complaint and pleadings. Bryan set forth in his complaint that: He is a resident of Stillwater, Oklahoma, and a licensed real estate broker; on July 1, 1970, he established the Bryan Agency in Stillwater and entered into a real estate brokerage business; he applied for membership and was accepted in the Stillwater Board of Realtors, Stillwater Multiple Listing Service, Oklahoma Association of Realtors, and the National Association of Real Estate Boards; by the end of 1971, the Bryan Agency was the number two realtor in Stillwater, both in listings and sales; the Stillwater Board of Realtors is a charitable, benevolent, educational or scientific corporation composed of an association of real estate brokers, salesmen, and others engaged in the real estate business in Stillwater; the defendants (other than Board) are active members of Board; the activities of the Board and its members are "within the flow of interstate commerce and have an effect upon that commerce" (R., Vol. I, p. 3.) in that (a) Board members render services bringing buyers and sellers together re real estate transactions, for a commission or fee, and arranging for insurance, financing, etc., in the City of Stillwater, (b) a substantial number of persons "using the services of Board members in connection with real estate transactions are persons moving into . . . Stillwater . . . from places outside the State of Oklahoma, and persons moving from Stillwater to places outside the State of Oklahoma" (R., Vol. I, p. 3); (c) because of the Board (members) efforts aforesaid, Board members ". . . have caused substantial amounts of such financing, insurance, commodities and services to move into the City of Stillwater from outside the State of Oklahoma from businesses operating in interstate commerce . . . (and) the commissions and fees charged by Board members for their services have a direct and substantial effect upon the financing, insurance, commodities and the businesses which provide them"; that there are distinct advantages of being a member of the Stillwater Board of Realtors, referred to in subhearings as Educational Advantages, Multiple Listing Service (advantage), Prestigious and Confidence Advantages; Professional Recognition, Referral and Marketing Systems (advantages), and Legislative Representation and Lobby (advantages); on September 21, 1973, Bryan was "unjustifiably expelled from the Board" (R., Vol. I, p. 6.) after exhausting all administrative remedies; on December 23, 1974, Bryan re-applied for membership with Board and even though . . . "he met each and every criteria of membership" (R., Vol. I, p. 6.), his application was rejected; and as a result, Bryan has lost all of the aforesaid advantages of being a realtor, been placed in a severe competitive disadvantage and has had his business destroyed to extent of reduced revenues of $107,600.00.
 
 
 8
 In Bryan's prayer for relief in the complaint he requested (1) that the defendants (hereinafter jointly referred to as Board for convenience) be adjudged in violation of Sections 1 and 2 of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1 and 2 and the Clayton Anti-Trust Act, 15 U.S.C.A. §§ 15, 22 and 26, in that they did, directly and through combination and conspiracy, monopolize and attempt to monopolize the real estate business in Stillwater, (2) the issuance of a permanent injunction restraining Board from engaging in the aforesaid activities in violation of the antitrust laws of the United States and for an injunction restraining ". . . the Board and each of its members from denying the Plaintiff membership in the Board . . ." (R., Vol. I, p. 7.); and, (3) the award of money damages for treble the amount of actual damages sustained by Bryan, costs and attorneys fees, and such other relief necessary to prevent such antitrust violations and to promote competition.
 
 
 9
 Board filed motions to dismiss with supporting affidavits and memoranda of law, contending that Bryan's complaint failed to state a claim under rule 12(b) (6), Supra, and that the Court lacked jurisdiction over the subject matter because the activity complained of is local and does not restrain trade or commerce among the states. rule 12(b)(1), Supra. The motions were granted. Bryan appeals.
 
 
 10
 On appeal, Bryan contends that the trial court erred in granting Board's Motion to Dismiss. We will consider his arguments in the manner presented.
 
 I.
 
 11
 Bryan contends that the trial court erred in granting Board's Motion to Dismiss based upon his failure to state a claim upon which relief may be granted (Fed.Rules Civ.Proc., rule 12(b)(6), Supra ) because, (a) the court erroneously failed to follow the view of the courts that such motions are looked upon with disfavor in private antitrust actions, and (b) the court erroneously applied the law to the facts in the case. We disagree.
 
 
 12
 Bryan cites many case authorities for the generally accepted rules that a motion to dismiss for failure to state a claim is viewed with disfavor, and particularly so in a private antitrust action. Bryan contends that his complaint meets all of the commands of Fed.Rules Civ.Proc., rule 8(a), Supra, including the existence of a conspiracy in restraint of interstate commerce resulting in direct injury to his business. For purposes of reaching the "in restraint of interstate commerce" allegation, Bryan argues that the alleged conspiracy is in restraint of (interstate) commerce because: "First, a substantial number of persons using the services of Board members in conjunction with real estate transactions are persons moving into the City of Stillwater from outside the State of Oklahoma, and persons moving from the City of Stillwater to places outside the State of Oklahoma. Secondly, as a result of their efforts in arranging for financing, insurance, and other commodities and services necessary to real estate transactions in the City of Stillwater, Board members have caused substantial amounts of such financing, insurance, commodities and services to move into the City of Stillwater from outside the State of Oklahoma from business operating in interstate commerce . . . Lastly, Board members have access to national referral and marketing systems, whereby cooperating broker members split commission fees in return for early information about a prospective seller or buyer." (Brief of Appellant, pp. 9, 10.) In like manner, Bryan contends that by reason of denial of his membership in Board, the Board members practiced a conspiracy upon him by denying him Board services relating to businesses operating in interstate commerce. (Brief of Appellant, pp. 10-13.)
 
 
 13
 We agree with Board's contention that Bryan's grievance is clear: He is aggrieved that his application for membership to Board has been denied and the target or purpose of his suit is to gain such membership. The complaint does not contain any factual averments, even by inference, constituting a conspiracy in restraint of interstate commerce actionable under the federal antitrust laws and none supporting an unlawful monopoly or attempt to monopolize trade or commerce. Significantly, although Bryan alleges that He has suffered damages by reason of business losses resulting from his membership rejection with Board, he Has not alleged that any member of the public has suffered by reason thereof and certainly he has not alleged that Board has engaged in price fixing. The Sherman Act must be construed to serve its object of preserving from unlawful restraint free competition In interstate commerce. United States v. Union Pacific Railroad Company, 226 U.S. 61, 33 S.Ct. 53, 57 L.Ed. 124 (1912). It is the rule that in pleading the requisite anti-competitive effect in a federal antitrust suit, there must be some allegation of ultimate facts sufficient to show restraint on interstate commerce. Such is lacking here. In Swift and Company v. United States, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518 (1905), the Court held that a combination of dominant dealers in fresh meat embracing restraint and monopoly of trade Only within a single state insofar as operable primary transactions were concerned, still constituted restraint of commerce among the states because the subject matter is Sales of meat ". . . and the very point of the combination is to restrain and monopolize commerce among the states in respect to such sales." 196 U.S., at p. 397, 25 S.Ct., at p. 279. The meat, of course, was destined for interstate sales.
 
 
 14
 In Hopkins v. United States, 171 U.S. 578, 19 S.Ct. 40, 43 L.Ed. 290 (1898) the Supreme Court observed:
 
 
 15
 The act of congress must have a reasonable construction or else there would scarcely be an agreement or contract among business men that could not be said to have, indirectly or remotely, some bearing upon interstate commerce, and possibly to restrain it.
 
 
 16
 171 U.S., at 600, 19 S.Ct., at 48.
 
 
 17
 As recently as 1950 the United States Supreme Court, in dictum, reaffirmed the Hopkins and subsequent Anderson opinions in United States v. Real Estate Boards, 339 U.S. 485, 70 S.Ct. 711, 94 L.Ed. 1007 (1950). This case involved a Sherman Act charge of a Price-fixing conspiracy by the Washington, D. C. Real Estate Board under § 3 of the Act. The Court said, Inter alia :
 
 
 18
 Hopkins v. United States, 171 U.S. 578, 19 S.Ct. 40, 43 L.Ed. 290, and Anderson v. United States, 171 U.S. 604, 19 S.Ct. 50, 43 L.Ed. 300, are not opposed to this conclusion. It was held in those cases that commission merchants and yard traders on livestock exchanges were not engaged in interstate commerce even though the livestock moved across state lines (cf. Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735 (23 A.L.R. 229)) and therefore that the rules and agreements between the merchants and traders (which included in the Hopkins case the fixing of minimum fees) did not fall under the ban of the Sherman Act. But we are not confronted with that problem here. As noted, we are concerned here not with interstate commerce but with trade or commerce in the District of Columbia.
 
 
 19
 339 U.S., at p. 492, 70 S.Ct., at p. 716.
 
 
 20
 Bryan does not contend that Board is engaged in a price-fixing conspiracy. We assume, of course, that he would not seek membership in an organization so engaged.
 
 
 21
 We observe that a price-fixing conspiracy is violative of § 1 of the Sherman Act whether the activity is interstate or intrastate in character. Significantly in Goldfarb v. Virginia State Bar, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) the Supreme Court held that § 1 of the Sherman Act was violated by the strictly intrastate activity of the State Bar by reason of its publication of a minimum-fee schedule and by its enforcement by the State Bar, because it constituted a classic example of price fixing.
 
 
 22
 The factual allegations contained in Bryan's complaint relating to the Activities of Board which he alleges to constitute a conspiracy in restraint of interstate trade or commerce miss the mark. This court, in Jewel Tea Co. v. Williams, 118 F.2d 202 (10th Cir. 1941) discussed, by analogy, the need for a nexus between the movement and the alleged conspiracy:
 
 
 23
 The mere fact that an anticipated local transaction causes a movement in interstate commerce is not sufficient to constitute the local transaction a part of interstate commerce. The language of the Supreme Court in Schechter Corporation v. United States, 295 U.S. 495, 543, 55 S.Ct. 837, 849, 79 L.Ed. 1570 (97 A.L.R. 947) . . . is apposite:
 
 
 24
 'The mere fact that there may be a constant flow of commodities into a state does not mean that the flow continues after the property has arrived and has become commingled with the mass of property within the state and is there held solely for local disposition and use . . . Hence, decisions which deal with a stream of interstate commerce where goods come to rest within a state temporarily and are later to go forward in interstate commerce and with the regulations of transactions involved in that practical continuity of movement, are not applicable here.'
 
 
 25
 118 F.2d, at 207.
 
 
 26
 The trial court did not err in granting Board's motion to dismiss Bryan's complaint based upon his failure to state a claim upon which relief may be granted.
 
 II.
 
 27
 Bryan contends that the trial court erred in granting Board's motion to dismiss based upon lack of subject matter jurisdiction as authorized under Fed.Rules Civ.Proc., rule 12(b)(1), Supra.
 
 
 28
 In United States v. Yellow Cab Co., 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947), the Court said:
 
 
 29
 . . . Section 1 of the Act outlaws unreasonable restraints on interstate commerce, regardless of the amount of the commerce affected. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, note 59, page 225, 60 S.Ct. 811, 846, 84 L.Ed. 1129 . . .; Apex Hosiery Co. v. Leader, 310 U.S. 469, 485, 60 S.Ct. 982, 84 L.Ed. 1311 (128 A.L.R. 1044). And § 2 of the Act makes it unlawful to conspire to monopolize "any part" of interstate commerce, without specifying how large a part must be affected. Hence it is enough if some appreciable part of interstate commerce is the subject of a monopoly, a restraint or a conspiracy. The complaint in this case deals with interstate purchases of replacements of some 5,000 licensed taxicabs in four cities. (Chicago, New York, Minneapolis and Pittsburgh) That is an appreciable amount of commerce under any standard.
 
 
 30
 332 U.S., at pp. 225, 226, 67 S.Ct., at p. 1564.
 
 
 31
 One of the contentions in Yellow Cab, supra, related to Sherman Act charges, i. e., that taxicabs in each of the cities transported persons between their homes, offices and hotels, with their luggage, to railroad stations, thus playing an appreciable part in interstate commerce. The Court put this contention down:
 
 
 32
 . . . such transportation is too unrelated to interstate commerce to constitute a part thereof within the meaning of the Sherman Act. These taxicabs, in transporting passengers and their luggage to and from . . . railroad stations, admittedly cross no state lines; . . . None of them serves only railroad passengers, . . . They have no contractual or other arrangement with the interstate railroads . . . In short, their relationship to interstate transit is only casual and incidental.
 
 
 33
 332 U.S., at 230, 231, 67 S.Ct., at 1567.
 
 
 34
 This court has adopted Yellow Cab's test of "some appreciable part of interstate commerce" in relation to a § 2 Sherman Act violation. See : Salco Corporation v. General Motors Corporation, Buick Motor Division, 517 F.2d 567 (10th Cir. 1975).
 
 
 35
 Our court has decided a case both factually and legally analogous to the case at bar. In Wolf v. Jane Phillips Episcopal-Memorial Medical Center, 513 F.2d 684 (10th Cir. 1975) the trial court granted a motion to dismiss plaintiff-appellant Wolf's complaint on the identical grounds relied upon by the district court in the instant case. Wolf, an osteopathic physician practicing in Bartlesville, Oklahoma, brought suit against the chairman and members of the board of trustees of Jane Phillips Episcopal Memorial Medical Center for refusing his repeated requests for membership on the medical staff. He alleged that the defendants "have agreed, reached some understanding or conspired among themselves" to restrict membership of the medical staff to medical doctors, thereby excluding Wolf and preventing him from treating his patients in the hospital. He claimed this constituted "concerted exclusionary action or group boycott" which was illegal per se under § 1 of the Sherman Act and that his medical practice involves directly or affects interstate commerce and that defendants' conspiracy to exclude him seriously restrains competition in interstate commerce. In rejecting Wolf's contentions on appeal and in affirming the trial court, we said:
 
 
 36
 The case most directly in point is Riggall v. Washington County Medical Society, 8 Cir., 249 F.2d 266, cert. denied, 355 U.S. 954, 78 S.Ct. 540, 2 L.Ed.2d 530 . . . There the plaintiff, a physician and surgeon, alleged that the members of the defendant medical society had conspired to refuse membership to the plaintiff and that, as a result, he had been prevented in his business from treating as many patients as would have otherwise sought his services. The court affirmed . . . (the lower court's dismissal) . . . noting that the treatment of patients who must travel interstate "does not result in (the plaintiff's) practicing his profession in interstate commerce as the transportation of such patients is incidental." Id. at 268. Riggall's complaint was "wholly lacking in allegations essential to a cause of action under the Sherman Anti-Trust Act." Id. at 270. We reach the same conclusion in the case at bar; the facts alleged do not support the proposition that the restraint upon plaintiff's practice causes more than an insubstantial effect upon interstate commerce.
 
 
 37
 513 F.2d, at p. 687.
 
 And:
 
 38
 . . . aside from a general allegation that his business involves interstate commerce, the plaintiff does not suggest that the defendants' conspiracy threatens his purchase of interstate goods or that the flow of such goods would be affected in any way by his exclusion from the . . . staff . . . Whatever effect the alleged conspiracy might have upon interstate commerce in goods purchased by the plaintiff is insubstantial . . . .
 
 
 39
 513 F.2d, at p. 688.
 
 And:
 
 40
 . . . even were we to concede . . . the interstate character of defendants' business, we fail to perceive the relevance to the plaintiff's claim that the defendants adopted a plan, that the plan limited or controlled the membership of the . . . medical staff . . . and that the plan . . . affected the services which the defendants themselves might provide. The facts alleged by the plaintiff cannot support the proposition that his exclusion from the medical staff has affected, or threatens to affect, the defendants, their hospitals, or through them interstate commerce. The facts do not support the existence of the requisite nexus between the defendants' conduct and interstate commerce. (Emphasis supplied.)513 F.2d, at p. 688.
 
 
 41
 Accord : Salco Corp. v. General Motors Corp., Buick Motor Division, supra ; Spears Free Clinic & Hospital v. Cleere, 197 F.2d 125 (10th Cir. 1952); Sun Valley Disposal Co. v. Silver State Disposal Co., 420 F.2d 341 (9th Cir. 1969); Elizabeth Hospital, Inc. v. Richardson, 269 F.2d 167 (8th Cir. 1959).
 
 
 42
 We hold that Bryan's interstate commerce allegations have no logical nexus with a Sherman Act restraint of interstate trade or commerce; that the Board and its members are not, in an antitrust sense, engaged in interstate trade or commerce since the conduct complained of is entirely of a local character; that nothing contained in Bryan's complaint does other than indicate that the acts complained of affect a business engaged in interstate commerce; and, finally, that the complained of conduct does not affect the interstate commerce of such business.
 
 
 43
 WE AFFIRM.