578 F.2d 1326
 1978-1 Trade Cases 62,079
 INCOME REALTY & MORTGAGE, INC., Plaintiff-Appellant,
v.
DENVER BOARD OF REALTORS, Fritchle & Co., Moore & Co., the
Trowbridge Agency, Inc., United Real Estate, Inc., John
Marshall, C. D. Fritchle, Keith Schaefer, C. A. "Chuck"
Trowbridge and Ken G. Grady, Defendants-Appellees.
and
Fuller & Co. and Donald L. Kortz, Defendants.
 No. 77-2051.
 United States Court of Appeals,
Tenth Circuit.
 Submitted March 29, 1978.
Decided June 2, 1978.
 
 Joseph A. Davies, P. C., Rasband & Davies, Denver, Colo., for plaintiff-appellant.
 John L. Ferguson and Robert E. Warren, Jr., Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., for defendant-appellee Denver Bd. of Realtors.
 James M. Lyons and James R. Everson, Rothgerber, Appel & Powers, Denver, Colo., for defendants-appellees Moore & Co. and Keith Schaefer.
 Before PICKETT, BARRETT and LOGAN, Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 Income Realty and Mortgage, Inc., a corporation and duly licensed real estate broker in Colorado, brought this action against Denver Board of Realtors, an association of Denver real estate brokers, and other real estate brokers in the Denver, Colorado area, asking for injunctive relief and damages resulting from alleged violation of United States antitrust laws, 15 U.S.C. §§ 1 and 2. The trial court sustained motions to dismiss the action, holding that "the complaint fails to present any substantial economic effect on interstate commerce, and thus fails to present a basis for federal jurisdiction." In other words, the trial court was of the opinion that the activities of the parties were wholly local and had no substantial adverse effect upon interstate commerce. We agree with this conclusion.
 
 
 2
 The complaint alleges that the Board and other defendants who were licensed Colorado real estate brokers doing business in the Denver metropolitan area, in the course of their business, "engaged in a combination or conspiracy to restrain trade or to reduce competition in the business of real estate brokerage by attempting to destroy the business of the Plaintiff, or to coerce Plaintiff into conducting its business in a manner and upon terms controlled by the Defendants." It was alleged that in furtherance of the conspiracy the defendants employed the following unfair trade practices:
 
 
 3
 a) Publishing false and defamatory statements concerning the Plaintiff, its officers and its business practices.
 
 
 4
 b) Accusing the Plaintiff of illegality, immorality, and lack of ethics in its business dealings.
 
 
 5
 c) Disparaging the reputation and integrity of the Plaintiff and its officers.
 
 
 6
 d) Stating that the Plaintiff was unworth(y) of membership in the Defendant, DENVER BOARD OF REALTORS.
 
 
 7
 e) Stating that, due to the unethical practices of the Plaintiff, other real estate brokers would not deal with the Plaintiff.
 
 
 8
 f) Inferring that the Plaintiff, because of its lack of ethics and integrity, was to be deprived of its license to engage in real estate brokerage in the State of Colorado.
 
 
 9
 g) Soliciting for the purpose of harassing and embarrassing the Plaintiff, grievances to be filed with the Colorado Real Estate Commission, a public body charged with the regulation of the business of real estate brokerage in the State of Colorado.
 
 
 10
 h) Inferring that the Plaintiff, in order to conceal unethical, immoral, and illegal business practices, refuses to enter into co-brokerage agreements with the Defendants and other real estate brokers.
 
 
 11
 It is further alleged that the actions of the defendants were undertaken to monopolize the business of real estate brokerage in the Denver metropolitan area.
 
 
 12
 The Sherman Antitrust Act, Section 1, prohibits every contract, combination or conspiracy "in restraint of trade or commerce among the several States . . . ." Section 2 makes it unlawful to monopolize or conspire to monopolize "any part of trade or commerce among the several States . . . ." Section 15 authorizes those injured by violations of the antitrust laws to sue in the United States Courts. In determining whether there has been a violation of the Sherman Act the test is whether the acts complained of substantially and adversely affect interstate commerce. United States v. Yellow Cab Co., 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947); Wolf v. Jane Phillips Episcopal-Memorial Med. Ctr., 513 F.2d 684 (10th Cir. 1975). In Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 194, 95 S.Ct. 392, 398, 42 L.Ed.2d 378 (1974), the Court said: "The jurisdictional reach of § 1 thus is keyed directly to effects on interstate markets and the interstate flow of goods." In Spears Free Clinic and Hospital v. Cleere, 197 F.2d 125, 126-127 (1952), this court said:
 
 
 13
 To come within the purview of the Sherman Act the restraint of commerce or the obstruction of commerce must be direct and substantial and not merely incidental or remote. The conspiracy or combination must be aimed or directed at the kind of restraint which the Act prohibits, or such restraint must be the natural and probable consequence of the conspiracy.
 
 
 14
 The rules in cases where jurisdiction in questionable are summed up in Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 743, 96 S.Ct. 1848, 1851, 48 L.Ed.2d 338 (1976), as follows:
 
 
 15
 . . . It is settled that the Act encompasses far more than restraints on trade that are motivated by a desire to limit interstate commerce or that have their sole impact on interstate commerce. "(W)holly local business restraints can produce the effects condemned by the Sherman Act." United States v. Employing Plasterers Assn., 347 U.S. 186, 189, (74 S.Ct. 452, 454, 98 L.Ed. 618, 623) (1954). As long as the restraint in question "substantially and adversely affects interstate commerce," Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 195, (95 S.Ct. 392, 398, 42 L.Ed.2d 378, 386) (1974); Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. (219), at 234, (68 S.Ct. 996 at 1000, 92 L.Ed. 1328 at 1333), the interstate commerce nexus required for Sherman Act coverage is established. " 'If it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze.' " Gulf Oil Corp. v. Copp Paving Co., supra, 419 U.S. at 195, (95 S.Ct. 392 at 398), quoting United States v. Women's Sportswear Assn., 336 U.S. 460, 464, (69 S.Ct. 714, 716, 93 L.Ed. 805, 811) (1949).
 
 
 16
 The allegations in Income's complaint as they relate to the effect upon interstate commerce are limited to the conclusory statement that the parties were "engaged in interstate brokerage of real estate." No facts are alleged which show any interstate involvement in the transactions of any of the parties to the litigation. A similar question arose in Bryan v. Stillwater Board of Realtors, et al., 578 F.2d 1319 (10th Cir. 1977). In that case the court recognized the rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. The parties in the Bryan case were in the same relation to each other as those in the case at bar.[1] Bryan sought injunctive relief and damages resulting from violations of the antitrust act. Unlike the present case, there were allegations in the Bryan case of activities that had some relation to interstate commerce. The court characterized those activities as being too unrelated and only incidental to interstate commerce and not a part thereof within the meaning of the Sherman Act. With reference to the inadequacy of the complaint, the court said:
 
 
 17
 . . . The complaint does not contain any factual averments, even by inference, constituting a conspiracy in restraint of interstate commerce actionable under the federal antitrust laws and none supporting an unlawful monopoly or attempt to monopolize trade or commerce. . . . It is the rule that in pleading the requisite anti-competitive effect in a federal antitrust suit, there must be some allegation of ultimate facts sufficient to show restraint on interstate commerce. . . . (Bryan, supra, at 1323.)
 
 
 18
 We conclude that the activities complained of in Income's complaint were wholly local and had no adverse effect or impact on interstate commerce as condemned by the Sherman Act. The trial court did not err in sustaining the motions to dismiss.
 
 
 19
 AFFIRMED.
 
 
 20
 LOGAN, Circuit Judge, concurring in part, dissenting in part:
 
 
 21
 The dismissal of the complaint by the court below was without leave to amend, apparently as contemplated under Fed.R.Civ.P. 12(b)(6). Thus this Court's affirmance of necessity is a ruling that not only is the complaint defective, but in the words of the trial court below, "The complaint, even if well pleaded, would not state a claim for relief under the Sherman Act. Thus, amendment is not practical or warranted in the premises." (R. 101).
 
 
 22
 In coming to its conclusion the lower court understandably relied upon our opinion in Bryan v. Stillwater Board of Realtors, 578 F.2d 674 (10th Cir. 1978). In my view while that opinion was probably correct on the facts in language it went too far, and the majority opinion in the instant case now compounds the error.
 
 
 23
 It seems to me certain that the Denver Board of Realtors and the prominent individuals and brokerage firms sued here, while operating essentially intrastate, have a sufficient connection with interstate commerce to come within the ambit of the Sherman Act, with respect to some of their activities. The Supreme Court has held recently that complaints alleging activities by a city-owned public utility to prevent competition by foreclosing markets, engaging in boycotts and utilizing sham litigation stated a cause of action under the Sherman Act. City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 392 n. 5, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978). It has also held valid as stating a cause under the Sherman Act, a complaint against individuals and hospitals within a city, asserting that the defendants employed bad faith tactics, including frivolous litigation, to block relocation and expansion of a local hospital. Hospital Building Co. v. Trustees of Rex Hospital, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976).
 
 
 24
 The Supreme Court has held the Sherman Act applies to services performed by attorneys in examining titles in connection with financing the purchase of real estate. Goldfarb v. Virginia State Bar, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975). There it struck down a minimum fee schedule for title examinations promulgated by a county bar association. It found the necessary nexus with interstate commerce in the need for a lawyer's title opinion in the financing of a real estate purchase, and in the fact that significant portions of funds to purchase real estate in Fairfax County, Virginia, come from outside the state and significant amounts of local mortgages are guaranteed by the United States Veterans Administration and the Department of Housing and Urban Development, headquartered outside of Virginia. "Given the substantial volume of commerce involved, and the inseparability of this particular legal service from the interstate aspects of real estate transactions, we conclude that interstate commerce has been sufficiently affected." 421 U.S. at 785, 95 S.Ct. at 2012.
 
 
 25
 In the only Supreme Court opinion involving such an organization there is language that the activities of a local real estate board are intrastate in character. United States v. National Association of Real Estate Boards, 339 U.S. 485, 70 S.Ct. 711, 94 L.Ed. 1007 (1950). But that case was under 15 U.S.C. § 3, involving the District of Columbia, where no nexus with interstate commerce is required, and the references were offhand and incidental to the opinion. The case did find that price fixing by the real estate board was a Per se violation of the Sherman Act. I believe the Supreme Court today would reach the same result under 15 U.S.C. § 1 in an action against the Denver Board of Realtors and the other defendants here, if they were involved in establishing minimum fee schedules. That was the result in many recent lower court cases. See United States v. Jack Foley Realty, Inc., 1977-2 Trade Reg.Rep. (CCH) P 61,678 (D.Md.1977); Oglesby & Barclift, Inc. v. Metro MLS, Inc., 1976-2 Trade Reg.Rep. (CCH) P 61,064 (E.D.Va.1976); United States v. Metro MLS, Inc., 1974-2 Trade Reg.Rep. (CCH) P 75,311 (E.D.Va.1973); Mazur v. Behrens, 1974-1 Trade Reg.Rep. (CCH) P 75,070 (N.D.Ill.1972); United States v. Atlanta Real Estate Bd., 1972-1 Trade Reg.Rep. (CCH) P 73,825 (N.D.Ga.1971). But cf. Hill v. Art Rice Realty Co., 66 F.R.D. 449 (D.C.), Aff'd mem., 511 F.2d 1400 (5th Cir. 1975) (expressing doubt about applicability without deciding); Marston v. Ann Arbor Property Managers (Management) Association, 302 F.Supp. 1276 (E.D.Mich.1969), Aff'd per curiam, 422 F.2d 836 (6th Cir.), Cert. denied, 399 U.S. 929, 90 S.Ct. 2244, 26 L.Ed.2d 796 (1970) (tenants in Ann Arbor, Michigan, against local apartment owners).
 
 
 26
 The Sixth Circuit has found a complaint against a real estate board that it conspired to prevent blacks from buying in white neighborhoods stated a Sherman Act cause, Bratcher v. Akron Area Board of Realtors, 381 F.2d 723 (6th Cir. 1967), while on somewhat similar allegations a Michigan district court found an insufficient connection with interstate commerce. Cotillion Club, Inc. v. Detroit Real Estate Board, 303 F.Supp. 850 (E.D.Mich.1964). A claim that plaintiff was denied participation in a real estate multiple listing service was found to state a cause under the Sherman Act. Gateway Associates, Inc. v. Essex Costello, Inc., 380 F.Supp. 1089 (N.D.Ill.1974).
 
 
 27
 Diversified Brokerage Services, Inc. v. Greater Des Moines Board of Realtors, 521 F.2d 1343 (8th Cir. 1975), in a case similar to our own Bryan case, denied relief to a broker who was not permitted to join the local board of realtors. In so doing it stated:
 
 
 28
 We emphasize the limited nature of our holding. Services affecting real estate, such as brokerage services, may, depending upon the evidence presented, either constitute interstate activities or have no nexus with interstate commerce and thus be beyond the reach of the Sherman Act. See Goldfarb v. Virginia State Bar, supra, 95 S.Ct. at 2012. In the instant case, plaintiffs presented extremely limited evidence and failed to show any interstate character to these real estate transactions. Additionally, plaintiffs chose not to attempt to show that the intrastate activities of defendants placed any substantial burden on interstate commerce. Finally, plaintiffs conceded in district court that the substantive and jurisdictional issues were not to intertwined as to preclude a jurisdictional ruling prior to trial on the merits (footnote omitted).
 
 
 29
 521 F.2d 1347.
 
 
 30
 My analysis of these cases compels me to conclude that realtors and real estate board activities in large metropolitan areas such as Denver, do sufficiently affect interstate commerce that they cannot be classified as immune from all antitrust claims.
 
 
 31
 That does not solve the problem, however. There is a difference between a Per se violation, such as price fixing, and what was alleged here. In private antitrust violations, except for Per se cases, a plaintiff to recover must prove that the public has been adversely affected by the alleged unlawful restraint. Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311 (1940). The basis of such a distinction is elaborated upon in the latest decision of the Supreme Court, National Society of Professional Engineers v. United States, --- U.S. ----, ----, 98 S.Ct. 1355, 1365, 55 L.Ed.2d 637 (1978) as follows:
 
 
 32
 There are, thus two complementary categories of antitrust analysis. In the first category are agreements whose nature and necessary effect are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality they are "illegal per se;" in the second category are agreements whose competitive effect can only be evaluated by analyzing the facts peculiar to the business, the history of the restraint, and the reasons why it was imposed. In either event, the purpose of the analysis is to form a judgment about the competitive significance of the restraint; it is not to decide whether a policy favoring competition is in the public interest, or in the interest of the members of an industry. Subject to exceptions defined by statute, that policy decision has been made by the Congress. (Footnote omitted.)
 
 
 33
 If the allegation in the case before us was of a Per se violation of the Sherman Act I would think the complaint would be valid, under the liberal construction we give to pleadings in the federal courts. But read liberally the complaint in the instant case asserts that the Denver Board of Realtors and the other defendants conspired to try to drive plaintiff out of the real estate business in Denver, and used slander and libel techniques to accomplish that end. The Sherman Act is designed to promote competition and the effect of that competition is that some businesses will be hurt by the activities of others. The defamatory acts alleged in the instant complaint could support a state court action. What is here involved is obviously in the second category discussed in National Society of Professional Engineers. To establish federal jurisdiction a showing must be made of how the public has been adversely affected by the unlawful activities alleged.
 
 
 34
 I agree with the majority opinion that no such showing has been made in this complaint. I have also searched the record in the case and can find out very little about the plaintiff, except that it is a real estate broker in Denver allegedly involved in interstate commerce. In its brief plaintiff claims to be responsible for "a substantial percentage of the sales and purchases of income real estate in and about the Denver Metropolitan Area," and "offers unique financing arrangements for the purchase and sale of income property." (R. 57). But we are not told how and to what extent there is an impact on interstate commerce by the actions of defendants which affected plaintiff. Plaintiff urges that the liberal reading of complaints extends to non Per se violation cases, See Radiant Burners, Inc. v. Peoples Gas Light & Coke Co., 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961), and that by such test this one is sufficient.
 
 
 35
 I do not agree with that contention. Where the jurisdiction of the court is not obvious, here because of the fact real estate brokerage is largely an intrastate business, I think the complaint must go further than in cases where the interstate aspect is clear. If it does not make some detailed allegations establishing a Prima facie case for jurisdiction, then the court must try the case before it can determine whether it has jurisdiction.
 
 
 36
 Perhaps it will be impossible for plaintiff to make a Prima facie showing of sufficient impact to sustain its claim of jurisdiction in the federal court. I cannot affirm that from the record, however, which consists only of the complaint, answers, motions, briefs and the court's order dismissing the complaint. I think the complaint should be dismissed, as the trial judge ordered, but with leave to amend, to show there was injury to the public substantially affecting interstate commerce if plaintiff-appellant can do it.
 
 
 
 [1]
 The plaintiff in the Bryan case was a licensed real estate broker in Stillwater, Oklahoma. The defendants were an association of real estate brokers and its members