Eugene and Jacqueline **GUERNSEY** et al., Plaintiffs,

v.

**RICH PLAN OF THE MIDWEST (a Division of Freeze-Bank, Inc.) et al., Defendants.**

No. H 74–67.

United States District Court, N. D. Indiana, Hammond Division.

Feb. 2, 1976.

584

Murphy, McAtee, Murphy & Costanza,
East Chicago, Ind., for plaintiffs.

Samuel Goodman and Frederick Ball, Given, Dawson & Cappas, East Chicago, Ind., for Rich Plan.

W. Patrick Downes, Galvin, Galvin & Leeney, Hammond, Ind., for Konopiots.

Steve Enich, Milwaukee, Wis., for McMahons.

## MEMORANDUM OPINION AND ORDER

ALLEN SHARP, District Judge.

The plaintiffs, Eugene and Jacqueline Guernsey, have instituted this action on behalf of themselves and all other similarly situated persons. The complaint reads in seven rhetorical counts—five "federal" counts and two "state law" counts. The plaintiffs pray for injunctive relief as well as compensatory and punitive damages. In the complaint, the plaintiffs allege violations of 15 U.S.C. § 45(a), 15 U.S.C. § 2, 15 U.S.C. § 77a et seq., 15 U.S.C. § 1640, and the common law torts of fraud and misrepresentation plus violations of the Indiana Deceptive Sales Practices Act, IC (1971) 26–1–2–313.

Defendant Rich Plan of the Midwest (hereinafter "Rich Plan"), filed a lengthy motion to dismiss based upon assertions that: (1) the court lacks subject matter jurisdiction, (2) that the plaintiffs' complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6) and, (3) that the court should abstain.

On June 18, 1975 the court granted the plaintiffs' motion to strike paragraph number 5 of the defendant Rich Plan's motion to dismiss. Paragraph number 5 alleged that the requisite jurisdictional amount under 28 U.S.C. § 1332 was not present. Therefore, the question of the challenged jurisdictional amount is not at issue at this particular time and the court will now rule upon the other issues presented by Rich Plan's motion to dismiss.

## JURISDICTION–COUNT I

Count I of the plaintiffs' amended complaint alleges that the plaintiffs have been victimized by "unfair [and] deceptive acts or practices in commerce" committed by the defendant Rich Plan all in violation of the Federal Trade Commission Act, 15 U.S.C. § 45. Jurisdiction is based upon 28 U.S.C. § 1337, which reads as follows:

"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade or commerce against restraints and monopolies" 28 U.S.C. § 1337

Under this section of the United States Code, no minimum dollar amount is necessary to invoke federal jurisdiction, but the basis for the jurisdiction must appear from the well-pleaded facts in the complaint standing alone and unaided. *Springfield Television, Inc. v. City of Springfield, Missouri*, 428 F.2d 1375 (8th Cir. 1970). The language of § 1337 applies to the Federal Trade Commission Act, 15 U.S.C. § 45. See *Holloway v. Bristol-Myers Corp.*, 158 U.S.App.D.C. 207, 485 F.2d 986 at 988 n. 2 (1973).

Count I of the amended complaint is not plainly insubstantial nor frivolous, therefore, Count I of the complaint is sufficient to invoke subject matter jurisdiction pursuant to § 1337. The court now assumes jurisdiction over Count I of the amended complaint and declines to exercise its discretion in favor of abstention.

The next issue is whether Count I states a cause of action and can withstand a motion pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. Whether a complaint states a cause of action upon which relief could be granted is a question of law and, just as issues of fact, it must be decided after and not before the court has assumed jurisdiction over the controversy. *Bell v. Hood*, 327 U.S. 678 at 682, 66 S.Ct. 773, 90 L.Ed. 939 (1945).

In Count I, the plaintiffs allege that defendant Rich Plan violated the FTC Act, 15 U.S.C. § 45, and these al-

leged violations form the sole basis for the relief sought in Count I. For the purposes of ruling upon a motion to dismiss, the court must accept all of the allegations in the complaint as true. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

In pleading paragraph 40 of Count I of the amended complaint, plaintiffs have alleged that defendant Rich Plan has used sales practices which have been found and declared to be unlawful under 15 U.S.C. § 45(a)(1) by the Federal Trade Commission. See, *In the Matter of Rich Plan Corporation et al.*, No. C–614, before the Federal Trade Commission, October 31, 1963 (Exhibit "C", Plaintiffs' Reply Brief).

Defendant Rich Plan's motion to dismiss is based upon the theory that the Federal Trade Commission Act itself contains no provisions for private enforcement because the Commission has original jurisdiction over the acts complained of. *LaSalle Street Press, Inc. v. McCormick and Henderson, Inc.*, 293 F.Supp. 1004 (D.C.Ill.1968).

### ANALYSIS OF ISSUES RAISED BY COUNT I

■■ The theoretical framework for implying a private right of action from a federal regulatory statute is known as the "doctrine of implication". See, *Holloway v. Bristol-Myers, supra*. In order to imply a remedy under the doctrine, the court must determine that (1) the provision violated was designed to protect a class of persons including the plaintiffs from the harm of which the plaintiffs complain, and that (2) it is appropriate in light of the statute's purposes to afford plaintiffs the remedy sought. See, *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *J. I. Case v. Borak*, 377 U.S. 426, 81 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

Federal Courts have historically found that no private action could be implied from the Federal Trade Commission Act. *Holloway v. Bristol-Myers, supra, Carl-* *son v. Coca-Cola Company*, 483 F.2d 279 (9th Cir. 1973). Since 1914, the Federal Trade Commission has been responsible for enforcing the provisions of the act. See *"FTC Rulemaking v. Private Enforcement"*, 69 Nw.U.L.Rev. 462 (1974).

However, the efficacy of the Federal Trade Commission in acting to deter consumer fraud is suspect. Most defrauded customers have no remedy at all because the Government cannot possibly act in more than a small fraction of all of the cases of deceit and overreaching against consumers. The Federal Trade Commission currently receives about 9,000 complaints a year and is only able to investigate one out of eight or nine of these, and, of the small fraction investigated, only one in ten results in a cease and desist order. Robert Eckhard, "Consumer Class Actions", 45 Notre Dame Lawyer, 663 at 640 (1970), citing E. Cox, R. Fellmeth, and J. Schultz, "The Nader Report on the Federal Trade Commission: (1969). Even then, the efficiency of a cease and desist order entered by the Federal Trade Commission has been severely criticized. The Chairman of the Federal Trade Commission, Mr. Lewis Engman, has stated that:

"From a purchaser's point of view, a cease and desist order entered by the Federal Trade Commission is far short of the mark." Engman, "New Consumer Standards", 40 Ins. Counsel J., 524 at 526.

As a case on point, the record of the Federal Trade Commission's proceedings against the Holland Furnace Company over a 29 year span bears mute testimony to the Commission's ability to protect consumers from ongoing fraud. *Holland Furnace Co. v. FTC*, 269 F.2d 203 (7th Cir. 1960); Eckhard, "Consumer Class Actions" supra, at 667. The Federal Trade Commission first issued a cease and desist order against Holland in 1936. Complaints against the company continued unabated, but the Federal Trade Commission did not institute enforcement proceedings until 1965 for violations of the cease and desist order. *In Re Holland Furnace Co.*, 341 F.2d 548

(7th Cir. 1965). The ineffectiveness of the Federal Trade Commission was argued in the *Holloway* case. The court referred to the delay of over a decade in prosecuting the action as "extreme caution" on the part of the Federal Trade Commission. *Holloway v. Bristol-Myers, supra* at 1000. While complaints of this nature have become more frequent, Congress has not seen fit to alter the basic statutory plan as it was amended in 1938. See White, "FTC: Wrong Agency for the Job of Adjudication", 61 A.B.A.J. 1242 (1975). The Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, 88 Stat. 2183 (1974) expanded consumer remedies but does not alter the Federal Trade Commission Act as it relates to suits of this type.

In this case, as in the *Holloway* case, the Federal Trade Commission is not a party in the suit and private litigants are attempting to establish a right of action under 15 U.S.C. § 45. However, the factual context of Holloway is significantly different from the case at bar. Until 1970, all attempts by private litigants to prevail in actions based on the Federal Trade Commission Act were undertaken by injured competitors. Holloway was the first case to deal with the problem of a private remedy for consumers under the Act. Mrs. Holloway, a housewife, filed a class action against Bristol-Myers Corporation on behalf of those persons who were induced to purchase the pain reliever "Excedrin" in reliance upon the manufacturer's advertising representations. The suit charged that the company violated the Act by misrepresenting the effectiveness of the product. The actual damages suffered by Mrs. Holloway were minimal—being the difference in price between six 50 tablet bottles of Excedrin and the same number of aspirin tablets. The District Court held that it had no jurisdiction over a private action brought under the Federal Trade Commission Act and that the plaintiffs failed to state a claim upon which relief could be granted. *Holloway v. Bristol-Myers Corp.*, 327 F.Supp. 17 (D.D.C.1971). That ruling was upheld by the DC Circuit with dicta to the effect that private enforcement of the Federal Trade Commission Act would pose serious problems to the enforcement activities of the Federal Trade Commission and that it would be inconsistent with the legislative scheme established by Congress. *Holloway v. Bristol-Myers*, 158 U.S.App.D.C. 207, 485 F.2d 986 at 989 (1973).

Unlike *Holloway*, this case was filed to seek relief from the defendant's deceptive practices and acts and unfair methods of competition in violation of 15 U.S.C. § 45(a). The plaintiffs also allege that the defendant Rich Plan of the Midwest is operated as a franchise of the Rich Plan Corporation. Further, it is alleged that a cease and desist order was issued by the Federal Trade Commission on October 31, 1963 ordering:

" . . . respondent Rich Plan Corporation, a corporation, and its officers, and respondent Rich Plan of New Orleans, Inc., a corporation, and its officers, and respondents' agents, representatives and employees, directly or through any corporate or other device, in connection with the offering for sale, sale or distribution of freezers, food or freezer plans in commerce, . . . , do forthwith cease and desist from [various deceptive acts and practices which are nearly identical to the acts complained of in the instant case]."

Assuming, for the purpose of the motion to dismiss, that all of the allegations in the complaint are true, defendant Rich Plan of the Midwest, which was allegedly operated as a franchise of the Rich Plan Corporation, would fall within the class defined in the consent decree. As the activities of the companies involved in the consent decree above are nearly identical to the alleged activities of the defendant Rich Plan of the Midwest, it may be inferred that the Federal Trade Commission would have the same view of the practices in this case as it had of the practices that it ruled on in the 1963 cease and desist order. If that is the case, then, since the Federal Trade

588

Commission has examined the complained of practices and found them wanting, one of the hurdles to the private enforcement of the Federal Trade Commission Act has been cleared—that being that the Federal Trade Commission, with its overview of the national economy, is in a better position than a private litigant to gauge the injury a deceptive practice will cause of the public and to balance this against the likely cost of elimination the practice.

It would appear that the Federal Trade Commission had put its ponderous administrative processes in motion to enforce the Act against the Rich Plan Corporation. If, as it is alleged in the complaint, agents, employees, or representatives of Rich Plan Corporation have violated the Federal Trade Commission Act in their dealings with consumers, and have thus violated the cease and desist order issued in 1963, then the conclusion seems inescapable that the Federal Trade Commission Act, as enforced by the Commission, is an empty promise to consumers.

 The reasons which were set forth in *Holloway* to subrogate the consumers' interest to the "expert judgment" of the Federal Trade Commission are not present in this case. See, *Holloway, supra*, at 997. That court enumerated problems which might be presented to the Federal Trade Commission's enforcement of the act if private actions were "given a full head of steam", i. e. piecemeal lawsuits which would burden the defendants and the judicial system. The *Holloway* opinion's basis for finding that the enforcement of the Federal Trade Commission Act was discretionary and subject only to the "expert judgment" of the Federal Trade Commission rests upon the court's conclusion that ". . . Congress intended enforcement of the Wheeler-Lea Amendments to rest wholly and exclusively with the Federal Trade Commission, following the pattern laid down in the 1914 Act". *Holloway, supra*, at 997. This conclusion is reached without any citation of authority. This court has been unable to find any Federal case which has held that the Commission has exclusive jurisdiction, rather, its jurisdiction has been held to be primary rather than exclusive. *Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750, 756 (1926). There is no legislative intent that the Federal Trade Commission was to have "exclusive" jurisdiction. To infer that once the Federal Trade Commission has entered a case and enforced compliance with the Act, that subsequent private consumer actions would frustrate the purposes of the Act would deny consumers who were victimized by further violations any recovery. In weighing the benefits to the consumer against any possible damage to the Federal Trade Commission's role in "providing certainty and specificity to the broad proscriptions of the Act", [*Holloway*, at 998], the court must opt in favor of the consuming public. To conclude that, without exception the Federal Trade Commission, with its overview of the national economy, is in a better position than a private litigant to gauge the injury a deceptive practice will cause to the public and to balance this against the likely cost of eliminating the practice would be to seemingly ignore the basic premise of the free enterprise economy— that consumers should have the opportunity to choose between competing merchants on the basis of price, quality and service. The Federal Trade Commission Act has been the subject of 60 years of interpretation through adjudication and over ten years of rulemaking. See Gard, "Purpose and Promise Unfilled: A Different View of Private Enforcement Under the Federal Trade Commission Act", 70 Nw.U.L.R. 274 (1975). Both businessmen and courts should have no trouble determining the precise stricture of the act.

 In order to effectuate the purposes of the act in the face of the record before the court in this case, the defendant Rich Plan's motion to dismiss must be denied as to Count I. The conduct that defendant Rich Plan has allegedly engaged in to the detriment of the plain-

tiffs was ruled upon by the Federal Trade Commission in 1963 in another district. Therefore, the court holds that the plaintiffs do state a claim upon which relief can be granted by alleging that the practices engaged in by defendant Rich Plan are proscribed by the Federal Trade Commission Act. The plaintiffs have stated a cause of action, 15 U.S.C. § 45(a)(1), in their amended complaint for the reasons set out above.

## COUNT II

In Count II of the amended complaint, the plaintiffs seek to recover treble damages due to violations of 15 U.S.C. § 2, by the defendant Rich Plan. The Court has jurisdiction over the acts complained of in Count II pursuant to 15 U.S.C. § 15.

The defendant Rich Plan has moved the court to dismiss for failure to state a cause of action. (Rule 12(b)(6), Federal Rules of Civil Procedure.)

The plaintiffs have alleged that Rich Plan had a specific intent to monopolize a part of interstate commerce through the use of certain unfair methods of competition and by unfair or deceptive acts. For the purposes of a motion to dismiss, the court must accept the allegations of the plaintiffs as true, but the court must also read the complaint as a whole. The essence of the monopolization offense under § 2 is, (1) the possession of monopoly power in the relevant market and, (2) the willful acquisition of maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen or historic accident. *United States v. Grinnell Corp.*, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); *Sulmeyer v. Coca-Cola Company*, 515 F.2d 835 (5th Cir. 1975). This court subscribes to the view that the antitrust plaintiff bears the burden to show the defendant possesses monopoly power in the relevant market. *Sulmeyer*, Id. at 849; *Acme Precision Products, Inc. v. American Alloys Corp.*, 484 F.2d 1237 (8th Cir. 1973); *United States v. Empire Gas Corp.*, 393 F.Supp. 903 (D.C.Mo.1975). The plaintiffs have not sustained their burden of pleading the necessary requisites for an action under 15 U.S.C. § 2. Thus, even if the court were to rule that the said plaintiffs possess the necessary standing, the plaintiffs would fail to state a claim under Rule 12(b)(6) and the applicable case law with reference to the § 2 violations alleged in Count II. The defendant Rich Plan's motion to dismiss Count II is, therefore, granted.

## COUNT III

In Count III, the plaintiffs allege that the defendant Rich Plan, James I. McMahon, William E. McMahon, and Anthony Konopiots violated provisions of the Securities Act of 1933, 15 U.S.C. § 77a et seq. The violations allegedly arose from the interstate sale and purchase of a "Food and Freezer Service Agreement" (FFSA) and a "referral sales agreement" by these defendants. The defendants, Rich Plan and Anthony Konopiots, have filed motions to dismiss directed to the allegations contained in Count III of the amended complaint. Defendants, James McMahon and William McMahon, filed an answer to the complaint which contained affirmative defenses directed to the issue raised by the plaintiffs in Count III.

Basically, Count III alleges that the plaintiffs purchased a Food and Freezer Service Agreement; that the FFSA had little or no commercial value; and that the FFSA was purchased by the plaintiffs from the said defendants as a "referral sales agreement". Supposedly, the plaintiffs would receive twenty dollars each for each successful referral sale after they had purchased an FFSA costing Four Hundred and Ninety-nine Dollars.

The FFSA, on its face, is clearly not a security within the meaning and definition of the statute nor does it survive the test set forth in *SEC v. W. J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1943): An investment of money in

a common enterprise with profits to come solely from the efforts of others.

The remaining question is whether the referral sales agreement, offered in conjunction with the FFSA, is a security. In determining the meaning and scope of the word "security" under the *Howey* test, form should be disregarded for substance and the focus should be on economic reality. *Howey*, Id.; *Tcherepnin v. Knight*, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975). The FFSA is a signed document which provides, inter alia, that the customer has the right to buy food from Rich Plan, that certain protections will be provided if the customer is sick or unable to work and cannot make payments, that Rich Plan will service the freezer (which is bought under a separate agreement) for a period of ten years if the customers continue to make purchases on a "regular basis", and that Rich Plan will guarantee to save shopping trips and the cost of impulse buying. Basically for $499.00, the purchaser receives the right to buy food at the current price from Rich Plan and that Rich Plan will service their freezer—if they should happen to buy a freezer from Rich Plan. The referral sales agreement is allegedly offered to the purchaser of the FFSA, either as an inducement or as an afterthought,—and the purchaser will receive twenty dollars for each name that is given to the salesman that results in another sale. There are contrary contentions by the parties as to when and how the referral sales agreement is offered to the customer. If, as plaintiffs allege, the referral sales pitch was utilized by the salesman to induce the prospect to purchase the FFSA, then the activity would be prohibited by I.C. (1971) 24–4.5–2–411 as alleged in Count XII of the complaint. However, at this point, the court is not concerned with the possible State Law violation, but only whether the FFSA and the referral sales agreement constituted a security as defined by 15 U.S.C., § 77b(1) and the applicable case law cited above.

The court, having considered the record and all filings in this case and being fully advised in the premises finds that, regardless of when the salesman offered the referral sales agreement, the FFSA and the referral sales agreement are not the type of instruments that in our commercial world fall within the ordinary concept of security. See *United Housing Foundation, Inc. v. Forman*, 95 S.Ct. 2051, at 2058. The FFSA was neither purchased nor sold as an investment, therefore there can be no investment contract, hence no security. The referral sales agreement, which provided for a $20.00 referral fee, is not an instrument commonly known as a security and the court will not attempt to extend the definitions of a "security" to encompass such a transaction as is alleged here. *SEC v. Koscot Interplanetary, Inc.*, 365 F.Supp. 588 (D.C.Ga.1973).

Therefore, since the court has found that neither the FFSA nor the referral sales agreement, alone or in combination, are securities under the Act, the Court has no jurisdiction over Count III.

Therefore, it is ordered that defendants' motions to dismiss as to Count III be, and the same are hereby granted.

### COUNTS IV and V

In Counts IV and V, the plaintiffs have alleged that defendant Rich Plan has violated the Federal Truth-in-Lending Act, 15 U.S.C., § 1601 et seq., and Regulation Z promulgated thereunder (12 CFR § 226.1 et seq.) The court assumes jurisdiction of the above two counts pursuant to 15 U.S.C. § 1640(e). See *Allen v. Beneficial Finance Co. of Gary, Ind.*, 393 F.Supp. 1382 (D.C.Ind. 1975). The defendant Rich Plan has filed an answer to these two counts.

### COUNTS VI through XII

Counts VI through XII, inclusive, allege various violations of Indiana State Laws and common law torts. The plaintiffs allege jurisdiction pursuant to 28 U.S.C., § 1332, or, in the alternative, the doctrine of pendant jurisdiction. The defendant Rich Plan filed a motion to

dismiss directed to said counts alleging that the doctrine of pendant jurisdiction does not apply as the Federal claims made in the prior counts are insubstantial and the complaint, in fact, sets forth state law claims. Rich Plan contested the jurisdictional amount but the court ordered that part of the motion to dismiss stricken by an order dated June 18, 1975. The defendant Rich Plan also requests that the court abstain from the exercise of jurisdiction as to Counts VI through XII.

Abstention is an equitable doctrine founded on the court's exercise of judicial discretion. It is an extraordinary and narrow exception to the duty of a federal court to adjudicate the controversy before it. *Fed. Power Commission v. Corporation Commission of the State of Oklahoma*, 362 F.Supp. 522 (D.C.Okl.1973); *Partnow v. Moran*, 359 F.Supp. 519 (D.C.Del.1973). Abstention is not a doctrine that defers to state courts, preserving comity by creating additional hardships for the parties, especially the plaintiff. Rather, it is a rule of discretion to be exercised when the district court believes that some asset particular to the state court's jurisdiction will most likely aid in adjudicating the merits of the litigation. *Bond v. Dentzer*, 362 F.Supp. 1373 (D.C.N.D.N.Y. 1973); *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

Abstention is a judge-made doctrine. As such, it is left to the discretion of the court to properly determine its applicability in any particular instance.

The court sees no reason to exercise its discretion in favor of abstention in this case. Therefore, the defendant Rich Plan's motion to dismiss Counts VI through VII is denied and the court assumes jurisdiction of said counts under 28 U.S.C. § 1332, or, in the alternative, the doctrine of pendant jurisdiction.

Therefore, for the reasons set out above, Counts II and III are ordered dismissed and the defendants' motions to dismiss are denied in all other respects.