William **GREENBERG**, O.D., and Pearl Hauser, O.D., Plaintiffs,

v.

**MICHIGAN OPTOMETRIC ASSOCIATION, INC., Defendant.**

Civ. A. No. 78–73192.

United States District Court, E. D. Michigan, S. D.

Jan. 15, 1980.

Gilbert M. Frimet, James R. Lites, Frimet, Bellamy, Gilchrist & Jehle, Southfield, Mich., for plaintiffs.

Lawrence M. Glazer, Lansing, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

Before the court is a motion to dismiss this action brought by two optometrists to challenge the actions of the Michigan Optometric Association in terminating the plaintiffs' memberships in the association.

The plaintiffs' complaint is in two counts. Count one alleges that the defendant violated the Federal Trade Commission Act, 15 U.S.C. § 45 as supplemented by 16 C.F.R. Part 456, while count two alleges that the acts of the defendant had such a chilling effect on the plaintiffs' exercise of their right to freedom of speech as to be violative of the First Amendment to the United States Constitution.

The facts as set out in the plaintiffs' complaint are that the plaintiffs, both of whom are optometrists licensed by the state, have been eliminated from membership in the defendant organization, the Michigan Optometric Association, because of a form of advertising that plaintiffs utilize. As a part of their ordinary practice, plaintiffs hire persons to make telephone calls directly to persons whose union contacts make them eligible for optical benefits through insurance policies supplied by their employers.

The Michigan Optometric Association recently promulgated standards of conduct which are used to determine eligibility for membership. One such standard is that members are to refrain from "engaging in systematic verbal solicitation of patients in person, by telephone, or through agents." It is important to note that while these regulations prohibit the above acts, they permit advertising by television, in the yellow pages, by sign, and by other mediums which do not involve one-to-one contact.

As a result of these standards and the activities of the plaintiffs, defendant association terminated the plaintiffs' membership.

In its motion to dismiss, defendant makes four separate arguments, the first two of which deal with count one. Defendant claims that a private cause of action under the Federal Trade Commission Act does not exist and that only the Federal Trade Commission has standing to bring an action to enforce the Federal Trade Commission Act. In addition, defendant claims that even if plaintiffs may bring an action under the Federal Trade Commission Act, the activities involved in this lawsuit are not addressed by the Act or the regulations promulgated to supplement it.

In *Holloway v. Bristol-Myers Corporation*, 158 U.S.App.D.C. 207, 485 F.2d 986 (D.C.Cir.1973), the court, following a full examination of the history of the Act, held flatly that Congress never intended the Act to permit private causes of action. The analysis in this case was careful, and it has been followed by the vast majority of the courts addressing the issue. *Alfred Dunhill Limited v. Interstate Cigar Company*, 499 F.2d 232 (2d Cir. 1974); *Fulton v. Hecht*,

580 F.2d 1243 (5th Cir. 1978); *Naylor v. Case and McGrath, Inc.*, 585 F.2d 557 (2d Cir. 1978).

■ While the facts in these cases are sufficiently different from those in the present case to suggest that the holdings from these cases would not directly apply, the strong dicta which pervades these cases and the reasoning used by the courts convinces this court that there is a generally applicable rule that no private right of action is granted by the Federal Trade Commission Act.

The court is aware of the case of *Guernsey v. Rich Plan of the Midwest*, 408 F.Supp. 582 (N.D.Ind.1976), in which the court held that the private plaintiff could bring an action to enforce a cease and desist order which was issued by the Federal Trade Commission. This court need not decide whether the Federal Trade Commission involvement and issuance of a cease and desist order creates an exception to the general rule set out above because the facts in this case are quite different from those in *Guernsey*. There, the FTC had made the decision to involve itself in the dispute between the parties and had in fact made a determination that it was in the public interest to order the defendant to cease and desist. Under those circumstances, many of the arguments in *Holloway* are inapplicable, and the court held that the plaintiff had a right to go to court to have the FTC's order enforced.

The FTC has not decided that it is in the public interest for it to become involved in the instant dispute. Plaintiff argues that since the FTC has promulgated regulations concerning the optometric field, it has made a sufficient determination that the protection of the rights set out in the regulations is in the public interest. That argument goes much too far, however, and would necessitate flying in the face of *Holloway*, which this court believes to properly state the law.

■ Any private litigant could argue that in any action brought under the Act, Congress has determined that it is in the

public interest to do away with "unfair trade practices" and that therefore, he should be permitted to enforce that policy. This court believes that while *Holloway* and *Guernsey* are not inconsistent, the reasoning in *Holloway* compels the holding that these plaintiffs do not have a right to bring this action under the auspices of the Federal Trade Commission Act.

However, even if such right did exist, the regulations under which this action is nominally brought do not support the action that plaintiffs ask for.

The Federal Trade Commission Act prohibits "unfair acts or practices." 15 U.S.C. § 45(a)(1). The FTC has been authorized to develop rules to "define with specificity" certain acts and practices that are unfair. 15 U.S.C. § 57a(a)(1)(B). Part 456 of Title 16 of the Code of Federal Regulations describes certain advertising activities that may be undertaken by persons in the business of providing opthalmic goods and services. Subpart 9 (16 C.F.R. 456.9) describes the intent of the Commission as follows:

(a) It is the purpose of this part to allow retail sellers of opthalmic goods and services to disseminate information concerning those goods and services in a fair and non-deceptive manner to prospective purchasers. This part is intended to eliminate certain restraints, burdens, and controls imposed by state and local governmental action as well as by private action on the dissemination of information, including advertising, concerning opthalmic goods and services.

It is the intent of the Commission that this part shall preempt all state and local laws, rules, or regulations that are repugnant to this part, and that would in any way prevent or burden the dissemination of information by retail sellers of opthalmic goods and services to prospective purchasers, except to the extent specifically permitted by this part . . . . .

\* \* \* \* \* \*

(c) The Commission intends this part to be as self-enforcing as possible. To that end, it is the Commission's intent that this part may be used, among other ways,

as a defense to any proceeding of any kind which may be brought against any retail seller of opthalmic goods and services or refractionists who advertises in a non-deceptive and fair manner,[1]

(d) It is not the Commission's intent to compel any seller or refractionist to disseminate information by virtue of this part. On the contrary, the provisions of this part are intended solely for the protection of those sellers and refractionists who want to disseminate information but have been restrained or prevented from advertising due to the prohibitions and restrictions of state and local laws and regulations, or by private action.

16 C.F.R. 456.6(a)(1) declares:

(a) It is an unfair act or practice for any person, other than a state or a political subdivision or agency thereof, to prohibit, limit, or burden:

(1) The dissemination of information concerning opthalmic goods and services by any seller.

16 C.F.R. 456.6(c) provides:

The conditioning of membership in a professional or trade association of sellers or refractionists on a requirement that members or prospective members of that association not engage in the dissemination of information concerning opthalmic goods and services and eye examinations, or on a requirement that opthalmic goods and services be advertised only in a prescribed manner shall be deemed to prohibit, limit or burden the dissemination of that information.

Thus, the question is whether or not the activities undertaken by plaintiffs in contravention of the standards of conduct of the defendant are included in the words "dissemination of information." Those words are defined in 16 C.F.R. 456.1 as follows:

The "dissemination of information" is the use of newspapers, telephone directories, window displays, television, radio, or any other medium to communicate to the public any information, including information concerning the cost and availability of a product or service.

It is apparent that direct telephonic contact is not one of the specific examples given in the definition. However the definition also includes the use of "any other medium to communicate to the public . . . information concerning the cost and availability of a product or service." Plaintiffs contend that their actions clearly fall within this general definition.

While a telephone call is certainly a "medium to communicate . . . information," there are two things about the definition which lead this court to believe that the plaintiffs' actions were not meant to be protected. First of all, the media which are specifically listed are all of the type which communicates to the public at large and which cannot be hidden from anyone who might be in the right place at the right time. Advertising in this type of medium is very easy to police against fraud and untruth because anyone interested in the content of the communication need only watch the television, read the newspaper, or look at the sign.

The telephone call, on the other hand, is like the personal letter. This type of communication medium can be used by advertisers desiring to send their message to some specific target persons and at the same time to hide that same message from other specific persons for whatever reason. While ethical advertisers would presumably use this difference only to better direct their efforts at those who would be interested in the message, society is not unaware of the fact that there may be unethical advertisers who would use the secrecy of these one-to-one communications to avoid detection of improper statements by the relevant policing authorities.

That a distinction can be drawn between these two types of media is not to say that the distinction has in fact been made in the

---

1. The court need not treat seriously any argument that 16 C.F.R. 456.9(c) creates a private right of action for violations of this regulation.

The FTC cannot by regulation do what Congress has chosen not to do. See *Holloway v. Bristol-Myers Corporation, supra.*

regulation under study. However, a close look at the definition itself indicates that the FTC did recognize and implement this distinction by limiting the protection of the regulation to those communications which are made "to the public."

While the type of medium which is represented by the specific examples given in the definition does direct its message "to the public," the other type, represented by telephone calls and letters, directs itself to one specifically chosen individual at a time.

■ Given the fact of the distinction and the specific words of the regulation, this court cannot believe that the FTC either did not consider this distinction at all or that it considered it and decided to include both types of medium under its protective blanket. For this reason, the court holds that telephone contacts are not included in the definition of "dissemination of information" which is set out in 16 C.F.R. 456.1.

Both because these plaintiffs do not have a right to bring a suit of this kind under the Federal Trade Commission Act and because the regulation in question does not protect the activity involved in the lawsuit as pleaded by the plaintiffs, the motion to dismiss count one is granted.

Count two is based on the constitutional guarantee of freedom of speech. Plaintiffs claim that even if they are not able to secure the relief they seek through the Federal Trade Commission Act, the United States Constitution permits them to speak freely and the actions of the defendant have and will continue to have an improperly chilling effect on this right. This, they contend, means that the defendant has violated the Constitution.

There are two arguments raised by the defendant in its attempt to have this count dismissed. First, defendant argues that the rule laid down by the United States Supreme Court in *Ohralik v. Ohio State Bar*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), which permitted certain restrictions on advertising for the legal profession, is broad enough to be applied to the situation in this case. Secondly, defendant argues

that it is a totally private and voluntary organization and, as such, it is not subject to the proscriptions of the First Amendment.

At the outset of the discussion on this count, it should be noted that while plaintiffs' pleadings allege a violation of the First Amendment, it is clear from count two as a whole that the allegation is not of wrongdoing by the federal government but rather by the state, and, therefore, it is the Fourteenth Amendment which applies. Defendant acknowledged this and since there will be no prejudice to the defendant and since it would more effectively state the cause of action of the plaintiffs, count two will be considered as a claim under the Fourteenth Amendment, which adopts the protections of the First Amendment for use against the states. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).

Plaintiffs claim that *Ohralik* is quite a different case from the one at bar, and they assert that it would be error to extend the rule set down there by applying it in this situation. In *Ohralik*, the Court was faced with the discipline of an attorney for violation of Disciplinary Rules which effectively prohibited solicitation of business on a one-to-one basis. See ABA Disciplinary Rules 2–103(A), 2–104(A). The Court discussed the potential evils of direct contact solicitation and determined that it was permissible for a state to prohibit such activity even in the face of the First and Fourteenth Amendments.

Plaintiffs here argue that since *Ohralik* dealt with in person solicitation by lawyers and this case deals with telephone contacts with potential clients by employees of optometrists, the rule in *Ohralik* is not applicable to this case. In support of this argument, plaintiffs say that the opinion in *Ohralik*, as well as that in a related case, *In Re Primus*, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978), "stressed heavily the traditional role of the attorney and his ability to influence clients." Plaintiffs' Brief at 13. Plaintiffs then note the fact that as optometrists they are not professional influ-

encers and argue that the potential for abuse in one-to-one situations involving them is much less than it is when a lawyer is involved.

Most of the language in that opinion is equally applicable to the optometry profession. The purpose of the calls in this case is to influence. The Court based its ruling on "the evils of solicitation" and the "special responsibility" borne by the state "for maintaining standards among members of the licensed professions." 436 U.S. at 461, 460, 98 S.Ct. at 1921, 1920.

In the Court's discussion of the evils of solicitation, it emphasized as one of the primary problems the fact that the watchdogs of the professions cannot oversee the activities of persons involved in one-to-one solicitation and that this significantly reduced the state's abilities to fully and properly police the licensed professions.

The court said:

Unlike a public advertisement, which simply provides information and leaves the recipient free to act upon it or not, in-person solicitation may exert pressure and often demands an immediate response, without providing an opportunity for comparison or reflection. The aim and effect of in-person solicitation may be to provide a one-sided presentation and to encourage speedy and perhaps uninformed decision-making; there is no opportunity for intervention or counter-education by agencies . . . supervisory authorities, or persons close to the solicited individual. . . . In-person solicitation is as likely as not to discourage persons needing counsel from engaging in a critical comparison of the "availability, nature, and prices" . . .; it actually may disserve the individual and societal interest, identified in *Bates*, [*Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977)] in facilitating "informed and reliable decision-making."

436 U.S. at 457–58, 98 S.Ct. at 1919.

As support for its statement about the special responsibility that the state bears for maintaining professional standards, the Court cited an earlier case which dealt with the optometric profession. 436 U.S. at 460, 98 S.Ct. 1893. See *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

■ This court is convinced that a curtailment of one-to-one business solicitations by optometrists, supported by the state, is not violative of the Fourteenth Amendment.

As the Supreme Court said in *Ohralik*, "In . . . a situation, which is inherently conducive to overreaching and other forms of misconduct, the State has a strong interest in adopting and enforcing rules of conduct designed to protect the public from harmful solicitation by lawyers whom it has licensed." 436 U.S. at 464, 98 S.Ct. at 1923. Just as the Supreme Court found that interest strong enough to permit the anti-solicitation regulations in relation to the legal profession, this court holds that the state interest in protecting the consumers of the optometric profession is strong enough to permit the restrictions imposed here.

Because the court has determined the actions are permissible, even if the actions complained of may be considered to amount to "state action" so as to bring the Fourteenth Amendment into play, it need not discuss the issue of whether or not there is state action in this instance. Since the court has held that count two does not state a claim actionable under the Fourteenth Amendment to the United States Constitution, defendant's motion to dismiss count two is granted.

For all of the reasons stated, defendant's motion is granted in full, and judgment should be entered for defendant.

So ordered.