**Robert O. NARA, Plaintiff,**

v.

**AMERICAN DENTAL ASSOCIATION; Michigan Dental Association; and Copper Country District Dental Society, Defendants.**

**No. G M77–57 CA(2).**

United States District Court,
W. D. Michigan, N. D.

Sept. 30, 1981.

Charles R. Goodman, Michael E. Makinen, Wisti & Jaaskelainen, Hancock, Mich., for plaintiff.

H. William Butler, L. A. Hynds, Clark, Klein & Beaumont, Detroit, Mich., for Mich. Dental.

Jeryl A. Manchester, Vairo, Mechlin, Tomasi, Johnson & Manchester, Houghton, Mich., for Copper Country Dist. Dental Society.

Peter M. Sfikas & Clay H. Phillips, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for American Dental Assn.

## OPINION RE MOTIONS FOR SUMMARY JUDGMENT

DOUGLAS W. HILLMAN, District Judge.

This matter is before the court on motions for summary judgment filed by defendants. Plaintiff, Robert O. Nara, is a dentist in Houghton, Michigan. His practice has consisted of a branch of dentistry that he has labeled, "Oramedics", which is restricted to the area of preventive dentistry. Dr. Nara alleges that defendants violated the antitrust laws under the Sherman Act, violated the Federal Trade Commission Act, libeled and slandered plaintiff, and denied him his rights under the First and Fourteenth Amendments. This lawsuit arises out of alleged illegal anti-trust action by the defendants following Dr. Nara's use of an advertisement in the Houghton-area telephone directory Yellow Pages. The advertisement stated that he specialized in "Oramedics—For People With Teeth Who Want To Keep Them", and his use of an unlicensed dental assistant in his office to perform tasks requiring a dental license. Defendants are national, state and local nonprofit, private organizations of dentists that suspended plaintiff's membership for participating in these activities.

Plaintiff filed his complaint in this action on April 13, 1977, against the American Dental Association (ADA), the Michigan Dental Association (MDA), and Copper Country District Dental Society (CCDDS). On April 22, 1977, plaintiff filed a first amended complaint, which dropped Count VI and added three counts. The Michigan State Board of Dentistry (MSBD) was added as a party defendant. Count VIII of the first amended complaint sought a preliminary injunction against a hearing scheduled before the MSBD to determine whether plaintiff had violated the Michigan Dental Code. This court, through an order and

opinion dated June 29, 1977, denied the motion for a preliminary injunction and dismissed plaintiff's complaint against the MSBD. After conducting hearings concerning the charges against Dr. Nara, the MSBD issued its final orders suspending him from the practice of dentistry for fifteen months and placing him on probation for two years.

These charges before the MSBD stemmed from Dr. Nara's use of unlicensed dental assistants to perform tasks that only licensed personnel could undertake and placement by him of an advertisement in the Houghton-area telephone directory stating that he specialized in "Oramedics". The Board found Dr. Nara guilty of violating those sections of the Michigan Dental Code prohibiting a dentist from advertising in a manner which tended to mislead or deceive the public and prohibiting a dentist from holding himself out as a specialist without a license to do so. In another order, Dr. Nara was found guilty of using unlicensed personnel for work requiring a dental license. Dr. Nara appealed these final orders to the Michigan Court of Appeals, the Michigan Supreme Court, and the United States Supreme Court, all of which declined to review the case.

Defendant American Dental Association has moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure on the ground that there is no genuine issue of material fact concerning subject matter jurisdiction and that defendants are entitled to judgment as a matter of law. Defendant Copper Country District Dental Society has joined in this motion.

Defendant Michigan Dental Association has also joined in the ADA motion and adopted its brief with the exception of Count III.

In a motion for summary judgment

"the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The movant has the burden of showing conclusively that there is no genuine issue as to any material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). The evidence and all inferences that can be drawn must be viewed in the light most favorable to the non-moving party. *Id.* Having reviewed the numerous pleadings, exhibits, depositions, answers to interrogatories, and briefs submitted by the parties, the court finds that the defendants have met their burden under Rule 56(c).

In Counts I and II, plaintiff alleges that defendants have combined to restrict competition in the sale of dental services and have attempted to monopolize the business of providing dental services in violation of The Sherman Act, 15 U.S.C. §§ 1 & 2 (1981). Section 1 of The Sherman Act renders unlawful contracts, conspiracies, and combinations in restraint of trade or commerce among the states.[1] Section 2 prohibits attempts to monopolize the sale of products or services in trade or commerce among the states.[2]

---

1. 15 U.S.C. § 1 states the following:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding one million dollars if a corporation, or, if any other person, one hundred thousand dollars or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

2. 15 U.S.C. § 2 states the following:

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding one million dollars if a corporation, or, if any other person, one hundred thousand dollars or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

■ The issue raised by defendants' motions is whether defendants' conduct has substantially affected interstate commerce. If not, this court cannot exercise jurisdiction over the claims asserted by plaintiff under The Sherman Act. *McLain v. Real Estate Board of New Orleans,* 444 U.S. 232, 242, 100 S.Ct. 502, 509, 62 L.Ed.2d 441 (1980). It should be noted that the interstate commerce in question here consists of the extent of plaintiff's practice of dentistry. *Riggall v. Washington County Medical Society,* 249 F.2d 266, 268 (8th Cir. 1957). It does not concern the generalized interstate activities of any of the defendants. Plaintiff has spent much effort to demonstrate that the ADA, for example, is a nationwide association of which the state and local organizations are constituent members. What is relevant is not the interstate character of defendants' activities, but the effect that the objectionable restrictions have on interstate commerce. *Wolf v. Jane Phillips Episcopal-Memorial Medical Center,* 513 F.2d 684, 687 (10th Cir. 1975). Of necessity, therefore, one must look at the extent to which plaintiff is engaged in interstate commerce.

Plaintiff contends that his professional activities as a dentist encompass interstate commerce and that these activities have been adversely affected by the regulations of defendants. In an affidavit, plaintiff states:

"[t]hat at the time this controversy arose, your Plaintiff obtained most or all of his dental supplies through distributors centered in the State of Wisconsin and that the value of said dental supplies is in the approximate amount of $30,000.00 to $50,000.00 per year at the time the controversy arose."

However, plaintiff does not assert that because of any unlawful conduct on the part of defendants there has been any decrease in the amount of dental supplies from Wisconsin.

An examination of federal tax returns produced by plaintiff from 1972 to 1976 refutes his claim that expenditures for dental supplies amounted to $30,000.00–$50,-000.00 per year. The following table demonstrates the amount of dental supplies purchased by plaintiff:

| YEAR | DRUGS | OFFICE SUPPLIES |
|------|-------|-----------------|
| 1972 | $3,595 | $2,296 |
| 1973 | 2,971 | 2,772 |
| 1974 | 3,294 | 3,771 |
| 1975 | 3,467 | 3,069 |
| 1976 | 4,614 | 4,004 |

Even if all of these supplies were purchased outside the State of Michigan, plaintiff has demonstrated no adverse impact on interstate commerce. Furthermore, it has been held that the movement of instruments in interstate commerce for use in a trade—as opposed to movement of the product or service—is insufficient to meet the jurisdictional prerequisite of The Sherman Act. *Heille v. City of St. Paul,* 512 F.Supp. 810 (D.Minn.1981).

In paragraph 2 of the affidavit, plaintiff states:

"[t]hat at the time the controversy arose between the Plaintiff and the Defendants, your Plaintiff was attempting to get federal funding for a research project at Michigan Technological University, and that the potential for this research by the Plaintiff was stopped by the agents of the Defendant, specifically Dr. P. Scott Navarro."

Plaintiff never alleges, however, any underlying information that Dr. Navarro is an agent of defendant ADA nor the specific acts that the alleged agents of defendant ADA did not prevent Dr. Nara from obtaining federal funds. In *Hahn v. Oregon Physicians' Service,* 508 F.Supp. 970 (D.Or. 1981), plaintiffs contended that their treatment of patients who crossed state lines, receipt of payments from out-of-state insurers, and out-of-state purchases of medical supplies and equipment were adversely affected by the conduct of defendants. Because less than two per cent of plaintiff's patients travelled across state lines, the percentage of medical supplies was inconsequential compared to their gross income, and the largest amount received from an out-of-state insurance company by one of the plaintiffs was less than 0.5% of his gross income, the court granted defendant's motion for summary judgment.

In paragraph 3 of the affidavit, plaintiff states:

> "at the time the controversy arose, your Plaintiff was making appearances and lecturing approximately twice a month throughout the United States and that he now has virtually no speaking and/or lecturing engagements."

This allegation does not specify a connection between any conduct of defendants and the purported loss of speaking engagements. Furthermore, plaintiff's alleged inability to secure speaking engagements in other states is not sufficient to establish a relationship with interstate commerce. *Daley v. St. Agnes Hospital, Inc.*, 490 F.Supp. 1309, 1317 (E.D.Pa.1980).

> Plaintiff states in paragraph 7 that:
>
> "at the time the controversy arose, your Petitioner was a consultant for Ritter Corporation, a corporation with a nationwide distribution of supplies and dental equipment and also international distribution and said position has been lost since this controversy arose."

In the first place, plaintiff states that he lost his position *after* the present lawsuit was filed, outside the relevant time period under consideration. Moreover, plaintiff does not particularize in any way the manner in which the ADA was responsible for the loss of his position.

Paragraph 4 of the affidavit states that a possible appearance on the television program, "60 Minutes" was "not finalized due to the controversy in question." Plaintiff again fails to make any connection between this allegation and a substantial effect on interstate commerce. In paragraph 6, plaintiff states that at least one article was rejected by a dental supply magazine because of "pressure or potential pressure" from the ADA. Plaintiff does not name the publication involved, does not indicate how the ADA was responsible for the article's rejection, nor explain the effect on interstate commerce. Plaintiff's allegation that he was on the editorial boards of *Dental Economics* and *Dental Student Magazine* does not relate at all to unlawful conduct on the part of defendants. The allegation does not even state that Dr. Nara was removed from the editorial boards.

Rule 56(e) of the Federal Rules of Civil Procedure provides in part that:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, *must set forth specific facts* showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." (Emphasis added.)

The affidavit submitted by plaintiff fails to show that there is a genuine issue as to any material fact concerning a substantial effect on interstate commerce.

Plaintiff finally contends that his dental practice in Houghton, Michigan, establishes the nexus with interstate commerce necessary to support subject matter jurisdiction. The deposition of Dr. Nara states that out of 1,676 patients, 42 (or approximately 2.5%) lived outside the State of Michigan. As the following cases reveal, this is an insufficient connection with interstate commerce necessary for subject matter jurisdiction under The Sherman Act. In *Wolf, supra*, at 685–688, plaintiff was an osteopathic physician who claimed that defendant hospitals conspired to restrict membership to medical doctors. The court upheld the district court's dismissal of his claim under Section 1 of The Sherman Act, 15 U.S.C. § 1, because his practice was completely intrastate in character. Consequently, the alleged restriction of defendants had no effect on interstate commerce. The court specifically disregarded plaintiff's allegation that defendants were engaged in interstate commerce and focused on the extent to which the medical practice of plaintiff was interstate in character. The present case is similar to *Wolf* in this respect. Virtually all of Dr. Nara's patients reside in the State of Michigan. With respect to other activities that plaintiff maintains are interstate in nature, he does not show any connection between them and the activities of defendants.

In *Nankin Hospital v. Michigan Hospital Service*, 361 F.Supp. 1199, 1210 (E.D.Mich. 1973), only one out of fourteen patients of plaintiff resided out of state. The court held that plaintiff did not engage in interstate commerce and that the sale of hospital services did not affect interstate commerce. Even assuming that a significant number of out-of-state patients travelled to Dr. Nara's office in Houghton, Michigan, it would not bear on the question of an effect on interstate commerce. It has been held that the transportation of patients across state lines for the purpose of health services is incidental to what is a personal and localized service. *Riggall v. Washington County Medical Society, supra*, at 268; *Nankin Hospital, supra*, at 1210; *Cf., Searer v. West Michigan Telecasters, Inc.*, 381 F.Supp. 634, *aff'd*, 524 F.2d 1406 (6th Cir. 1975).

Plaintiff relies heavily on *Boddicker v. Arizona State Dental Ass'n*, 549 F.2d 626 (9th Cir. 1977) to support his argument that he meets the jurisdictional requirements of The Sherman Act. In *Boddicker*, Arizona dentists were required to join the ADA as a condition precedent to membership in the Arizona state and county dental associations. Annual dues collected by the ADA were used to provide a wide range of services to dentists across the nation. These included the publication of various journals, accreditation of dental programs for hospitals, scheduling of speakers in the field of dentistry, and insurance coverage for members. No dentist could participate in these benefits without paying the annual dues to the ADA. Three Arizona dentists objected to this conditional arrangement, contending that expulsion from the ADA would prevent them from reaping the benefits of these programs.

Unlike the cases previously cited, the court in *Boddicker* based its holding in favor of plaintiffs on the interstate character of the ADA's activities in general and not on the effect of the restraint of which plaintiffs complained. It was undisputed that the dentists' practices were confined to the State of Arizona. As the defendants point out in their collective motions for summary judgment, however, the proceed-

ing before the court in *Boddicker* was a motion to dismiss the complaint. In that context, the court was obliged to accept as true the allegations in plaintiff's complaint; without any factual record, the court was unable to say as a matter of law that plaintiffs would be unable to establish whether or not the regulations of defendant affected interstate commerce. The present case is readily distinguishable because of the detailed discovery that the parties have amassed over the past three-and-one-half years. On the basis of this record and the absence of a genuine issue as to any material facts, the court is able to conclude that plaintiff has not shown a substantial impact on interstate commerce.

■ Even assuming jurisdiction under The Sherman Act, defendants would be exempt from The Sherman Act on the ground that the restrictions against a dentist advertising himself as a specialist and against the use of unlicensed personnel are noncommercial and designed solely to benefit the public. *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 786–787, 95 S.Ct. 2004, 2012–2013, 44 L.Ed.2d 572 (1975). In *Goldfarb*, a minimum fee schedule for lawyers was published and enforced by the local and state bars in Virginia. The fee schedule set minimum prices for common legal services. An attorney who habitually charged less than the prices in the schedule could be adjudged guilty of misconduct by the state bar.

The Court considered whether these activities were exempt from The Sherman Act because they involved a learned profession. As the Court noted, the legal profession has certain aspects similar to businesses, one of which is the exchange of a service for money. Thus, to the extent that the fee schedule restrained commerce among lawyers, it fell within the ambit of The Sherman Act. On the other hand, the court stated in a footnote that there are characteristics of a profession that may distinguish it from a trade in certain situations. It stated:

"The fact that a restraint operates upon a profession as distinguished from a business is, of course, relevant in determining

whether that particular restraint violates the Sherman Act. It would be unrealistic to view the practice of professions as interchangeable with other business activities and automatically to apply to the professions antitrust concepts which originated in other areas. The public service aspect, and other features of the professions, may require that a particular practice, which could properly be viewed as a violation of the Sherman Act in another context, be treated differently. We intimate no view on any other situation than the one with which we are confronted today."

*Id.* at 788 n. 17, 95 S.Ct. at 2013 n. 17.

In the present case, the dental associations have established a regulation whose purpose is not aimed at the economic side of the practice of dentistry. The activity being restrained here differs from the strictly commercial agreements in restraint of trade for which The Sherman Act was most clearly designed. The intent of the rule prohibiting advertising oneself as a specialist without approval of the governing body would appear to protect the lay public from assuming that the purported specialist is more qualified than the nonspecialist. Because no specialty in "oramedics" existed at the time that plaintiff was suspended, there were no standards by which Dr. Nara could be judged. The regulations of the defendants are, therefore, designed to prevent dentists from holding themselves out as specialists in areas in which no special training or education has been prescribed. With respect to using unlicensed personnel to perform the work of a licensed dentist the defendants clearly have an interest in protecting the public by adopting appropriate rules.

In *National Society of Professional Engineers v. United States*, 435 U.S. 679, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978), a canon of ethics for the National Society of Professional Engineers (Society) prohibited its members from engaging in competitive bidding. Under the canon, an engineer could not negotiate a fee for engineering work until the client had selected him for a specified project. This restriction prevented the solicitation and submission of engineering proposals on the basis of competing prices. The Society contended that competition among engineers was not in the public interest because it would lead to an inferior quality of engineering and to deception within the ranks of the profession.

The Court emphasized that although matters of public service and professional ethics are a proper concern of a learned profession, "the equation of competition with deception ... is simply too broad." *Id.* at 696, 98 S.Ct. at 1368. The present case is distinguishable from *Professional Engineers* in that the regulation in the latter was clearly economic and tended to restrain competition among members of the association. The regulation in this case is non-economic in nature and is designed to benefit the public.

 Because there is no jurisdictional basis for the federal antitrust claims, this court does not have pendent jurisdiction over the state matter of libel and slander in Count III. In Count IV, plaintiff alleges that defendants have denied plaintiff his First Amendment rights by enforcing their regulations against him. Because defendants are private organizations, the requirement of state action has not been met. Plaintiff has set forth no evidence demonstrating a connection between defendants and a state agency that would rise to the level of state action. Unlike the Michigan State Board of Dentistry, defendants have no power to enforce the Michigan Dental Code or suspend a dentist's state license. Defendants may enforce their own disciplinary rules as private organizations. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

 Count V alleges that the statutory procedures by which Dr. Nara was suspended and placed on probation by the MSBD violates due process. Count VI alleges that the statutes themselves denied plaintiff his rights under the First and Fourteenth Amendments. These counts are directed solely against the MSBD, which has been dismissed from the action. Furthermore, plaintiff appealed the final orders of the

MSBD suspending his license to the Michigan Court of Appeals, the Michigan Supreme Court, and the United States Supreme Court. These matters have been fully litigated and should not be relitigated in the district court. *Cramer v. General Tel. & Electronics Corp.*, 582 F.2d 259, 267 (3d Cir. 1978).

■ Count VII alleges that the sections of the Michigan Dental Code under which plaintiff was disciplined violate the Federal Trade Commission Act, 15 U.S.C. § 45 (1981). Because the interest protected by this statute is that of the public at large, there is no private right of action to enforce its provisions. 15 U.S.C. § 45 speaks only in terms of the Federal Trade Commission's power to enforce the Act. In *Greenberg v. Michigan Optometric Ass'n*, 483 F.Supp. 142 (E.D.Mich.1980), the court held that an optometrist did not have a private right of action to challenge defendant's termination of his membership in an optometric association. The FTC has made no motion to intervene in this case or otherwise indicated that practices involved here are a matter of public concern.

In the absence of a genuine issue of any material fact, the court shall grant the motions for summary judgment by the defendants.